

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-27-2006

# Seasonwein v. First Montauk

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4666

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Seasonwein v. First Montauk" (2006). *2006 Decisions.* Paper 836.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/836

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 03-4666

JEROME SEASONWEIN

Appellant

v.

FIRST MONTAUK SECURITIES CORPORATION

Appeal from the United States District Court
for the District of New Jersey

District Court No: 03-cv-00459

District Judge: Honorable Anne E. Thompson

Submitted Pursuant to Third Circuit LAR 34.1(a)[*]

November 12, 2004

Before: McKee, Chertoff,[**] Circuit Judges, and
Buckwalter, Senior District Judge,[***]
Filed June 27, 2006

OPINION

PER CURIAM

---

[*] The case was held CAV, pending the Supreme Court's decision in *Smith v. City of Jackson*, 544 U.S. 228 (2005).

[**] Judge Chertoff was part of the panel that initially considered this case, but resigned prior to the time the opinion was filed. The opinion is filed by a quorum of the panel. 28 U.S.C. § 46(d).

[***] Honorable Ronald L. Buckwalter, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Jerome Seasonwein appeals the district court's grant of summary judgment to First Montauk Securities in the suit he brought alleging age discrimination under the Age Discrimination in Employment Act ("ADEA"), and the New Jersey Law Against Discrimination ("NJLAD"). For the reasons that follow, we will affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[1]

## I.

Since we write primarily for the parties who are familiar with this dispute, we need only set forth the procedural and factual background to the extent that is helpful to our brief discussion. In reviewing a grant of summary judgment, we apply the same test the district court should have applied. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Walling v. Brady*, 125 F.3d 114, 116 (3d Cir. 1997). In making that determination, we review the facts in the light most favorable to the non-moving party, *Beers-Capital v. Whetzel*, 256 F.3d 120, 130 n.6 (3d Cir. 2001).

Both parties discuss the familiar allocation of the burden of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)**.** Seasonwein argues that the district court erred in concluding that he had not offered sufficient evidence of pretext to

---

[1] The district court granted summary judgment on Seasonwein's ADEA claim and then dismissed his state claim under the NJLAD for lack of subject matter jurisdiction. Inasmuch as we are reversing the grant of summary judgment on the federal claim and remanding for further proceedings, the district court will have subject matter jurisdiction to consider seasonwein's claim under the NJLAD.

overcome First Montauk's nondiscriminatory explanation that he was terminated as part of a reduction in force ("RIF"), necessitated by a downturn in business and reduced revenues. First Montauk argues that there is no evidence from which a reasonable jury could conclude that "discriminatory animus was . . . the motivating factor behind the RIF." Appellee's Br. at 19. First Montauk insists that the evidence "conclusively indicates" that it "discharged SEASONWEIN as part of an RIF, and . . . for no other reason." *Id.*, at 24.

SEASONWEIN does not dispute that he was terminated as part of First Montauk's RIF, and it is clear that he was. However, that does not end our inquiry. First Montauk continually stresses the business reasons for the layoffs without addressing the fundamental issue raised by Seasonwein's claim of age bias. The issue here is not whether Seasonwein was terminated pursuant to a RIF undertaken to address Fist Montauk's declining financial situation. Rather, the issue is whether there is a genuine issue of material fact about whether Seasonwein's age was a factor in selecting him for layoff pursuant to First Montauk's RIF.[2]

## A.

---

[2] Accordingly, we are not impressed by the fact that "Seasonwein admitted that, at the time of the initial lay-offs, he had already observed a decline in business and . . . 'production at First Montauk had dropped.'" Appellee's Br. at 4. We noted in *Olson v G.E. Astrospace*, 101 F.3d 947 (3d Cir. 1996), that a plaintiff's initial belief that he was not discriminated against is not determinative of the ultimate issue of the employer's motivation for an adverse employment action.

Under the *McDonnell Douglass* analysis, an ADEA plaintiff confronted with a motion for summary judgment must first establish a *prima facie* case. The burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse action. If the defendant satisfies that burden, the plaintiff may only survive summary judgment by coming forward with sufficient evidence to establish that either the employer's articulated reasons are not believable, or that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions.

To establish a *prima facie* case, Seasonwein "must prove that (1) he was discharged; (2) was qualified for the position; (3) was within the protected class at the time of discharge; and (4) was replaced by someone outside the protected class." *Dreyer v. Arco Chemical Company*, 801 F.2d 651 (3rd Cir. 1986). The district court found that Seasonwein had successfully made out a *prima facie* case. He was discharged, he was qualified for his position, and he is clearly within the class of workers protected by the ADEA. The court also held that Seasonwein had produced evidence that he was replaced by a younger employee, Larry Romeu. However, First Montauk claims that Romeu was already an employee when Seasonwein was laid off and that he (Romeu) was merely transferred to the Red Bank N.J. office from New York after Seasonwein left. *See* Appellee's Br. at 14, n. 2. Seasonwein's complaint actually alleges that First Montauk "transferred a substantially younger person, Lawrence Romeu, from another branch office

4

that Defendant had closed," and that First Montauk afforded Romeu an opportunity that it denied to Seasonwein based upon the latter's age. Compl. at ¶ 6. However, given the circumstances here, and Seasonwein's claim that he was treated less favorably because of his age, our analysis does not turn on whether Seasonwein was actually replaced by a younger employee. "The elements of [the] prima facie case , . . . must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." *Geraci v. Moody-Tottrup, International*, 82 F.3d 578, 581 (3d. Cir. 1996). We believe Seasonwein has produced is sufficient to raise a genuine issue of material fact regardless of the circumstances surrounding Romeu's transfer.

Seasonwein essentially argues that although First Montauk could clearly layoff employees as part of the RIF that was necessitated by the downturn in revenues, it could not do so in a manner that discriminated against him based upon his age.

As noted at the outset, we initially held this case "CAV" to await the Supreme Court's decision in *Smith v. City of Jackson* because the viability of Seasonwein's disparate impact argument was not at all clear. In fact, as First Montauk notes in its brief, in *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719,734 (3d Cir. 1995), we expressed skepticism about whether the ADEA encompassed a disparate impact claim.[3] However,

---

[3] Two members of the panel in *DiBiase* refused to join the portion of the opinion that cast doubt upon the viability of a disparate impact theory. Judge McKee and Judge Becker both felt that section of the opinion was not necessary. *DiBiase*, 48 F.3d at 71 n. 16, 732 n. 17. Accordingly, the section addressing disparate impact only expressed the opinion of Judge Greenberg, who authored the opinion for the panel. *See Id*. ("Judge Greenberg writes this subsection only for himself.").

given the Court's holding in *City of Jackson,* it is now established that the ADEA does prohibit employment practices that have a disparate impact on older workers who are protected by the ADEA.

In arguing for summary judgment, and in arguing before us, First Montauk relies on the undisputed evidence that it was forced to layoff workers because of an economic downturn. However, as Seasonwein correctly notes, First Montauk has not offered any explanation of how it determined which workers would be selected for layoff. *See* Appellant's Br. at 5. ("First Montauk's express reasons for the reduction in force are significant stock declines and substantial decline in firm revenues. It provided no reason for how the determination was made to terminate or retain anyone.").

Seasonwein now argues that he has presented sufficient proof of disparate treatment, and disparate impact to survive a motion for summary judgment. In reviewing a claim of disparate treatment, we determine if the evidence supports a plaintiff's claim that he/she, was discriminated against because of age. In contrast, in evaluating a claim of disparate impact, we focus on whether a facially neutral employment practice had a disparate impact on older workers in violation of the ADEA. *Smith v Xerox*, 196 F.3d 358, 371 (2nd Cir. 1999).

Seasonwein relies in part on evidence of each series of layoffs undertaken by First Montauk, in arguing that "[t]he combined salaries of those employees who were retained who were younger than age 40 was over $14,000 higher than the combined salaries of

those employees who were terminated during the reduction in force of mostly employees who were over age 40 . . .". Appellant's Br. at 6. We realize that totaling salaries is not extremely helpful to the issue of discriminatory animus or disparate impact because any apparent discrepancy may simply result from a greater number of employees being included in either group of employees, thereby skewing the salary totals in their favor. However, Seasonwein also points to evidence that "the average salary of those employees who were retained who were under age 40 was nearly $3,000 higher than the average salary of those employees over age 40 who were terminated during the reduction in force." *Id*.

Evidence that the average salary of the employees who were retained was greater than that of the employees who were laid off is inconsistent with First Montauk's claim that it selected employees for layoff under the RIF only to improve the companies financial situation. A reasonable jury could therefore reject the proffered explanation of why Seasonwein was laid off. Although First Montauk claims that Seasonwein is not comparing average salaries of employees who were similarly situated, that only raises an issue that must be determined by a fact finder. Thus, under the shifting burden of the *McDonnell Douglas* analysis, First Montauk had to go further and articulate how it decided which employees would be included in the RIF. Given its failure to do that, there is not enough on this record to grant summary judgment to First Montauk. The evidence is insufficient to defeat Seasonwein's claim that younger workers were favored during the

7

RIF.

Seasonwein relies in part on statistical evidence that he claims could establish that First Montauk was motivated by an age bias in selecting him for the final round of layoffs, and that the layoffs had a disparate impact on older workers. Courts have long recognized that statistical evidence can be used in disparate treatment as well as disparate impact cases. *See Age Discrimination in Employment Law*, Linderman and Kadue (BNA 2003), *see also, Bullington v. United Air Lines, Inc.*, 186 F. 3d 1301, 1319 (10th Cir 1999) ("In a disparate impact case, statistical evidence plays a central role because the plaintiff is attempting to show a particular practice had a disproportionate impact on a particular group, and not the employer's discriminatory intent.").

In reviewing Seasonwein's evidence, the district court relied in part upon the fact that First Montauk also "discharged a substantial number of employees outside of the protected class." *See* Appellant's Br. at 18. Seasonwein argues that the district court should have focused on comparing only those licensed traders who were laid off because only they are situated similarly to him. *See Anderson v. Consolidated*, 297 F.3d 242 (3d. Cir. 2002). As noted above, he then claims that the average salaries of the licensed traders who were retained was actually higher than the average of the licensed salaries who were laid off, and that the number of older workers laid off shows that First Montauk was trying to get a younger group of licensed traders, not just reduce expenses.

We realize, of course, that a jury might not be convinced by this evidence. We

8

also realize that there is evidence that First Montauk previously made special efforts to retain Seasonwein and support him during the course of his employment. However, that does not negate the fact that the evidence presented by Seasonwein combined with First Montauk's failure to provide any explanation of how it selected workers that would ultimately be laidoff raises a genuine issue of material fact sufficient to allow Seasonwein's claim of disparate treatment under the ADEA to survive summary judgment. It was therefore error to grant summary judgment in favor of Fist Montauk on that claim. However, we think the district court was correct in granting summary judgment on Seasonwein's disparate impact claim.

As we noted above, the Supreme Court confirmed that a disparate impact claim is cognizable under the ADEA. However, the Court also clarified that a "failure to identify the specific practice . . ." that resulted in a particular action having a disparate impact is fatal to a disparate impact claim under the ADEA. 544 U.S. at 241. In reviewing the allegations at issue there, the Court observed:

> petitioners have done little more than point out that the pay plan at issue is relatively less generous to older workers than to younger workers. They have not identified any specific test, requirement, or practice within the pay plan that has an adverse impact on older workers. . . . it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.

*Id*. (internal quotation marks omitted) (emphasis in original). The same is true here. In

9

his brief on appeal, Seasonwein does argue that First Montauk favored younger employees and targeted older ones in deciding who would be laid off. Those allegations may be sufficiently specific to allow a disparate impact claim to survive summary judgment under the *City of Jackson* inquiry. However, that is not what he alleged in his complaint. Rather, the complaint that was provided to us as part of Appellant's Appendix in this appeal only contains allegations of disparate treatment. For example, the Complaint states: "[First Montauk] . . . illegally terminated him because of his age," Complt at ¶ 1; "Plaintiff, . . . alleges that he has been discriminated against . . because of his age, . . ." *Id.,* at ¶ 9; "Seasonwein's forced termination was motivated solely by Defendant's intent to discriminate against Plaintiff on the basis of age," *Id.*, at ¶ 11; and he requests injunctive relief and damages "solely as a result of Defendant's discrimination against plaintiff on account of his age,. . ." *Id.*, at ¶ 14. Those allegations of discriminatory animus against him do not state a claim of disparate impact with any precision, let alone with the precision required under *City of Jackson*.

Although Seasonwein now argues a disparate impact theory to us, he must state a cause of action in his Complaint, not merely in his appellate brief, or in opposing a defendant's motion for summary judgment. Accordingly, we will reverse the district court's grant of summary judgment to First Montauk, insofar as it dismissed Seasonwein's claim of disparate treatment under the ADEA, and affirm summary

10

judgment insofar as it dismissed a claim of disparate impact.[4]

---

[4] The district court did not address Seasonwein's disparate treatment claim because it appeared at the time to have been foreclosed by the decision in *DiBiase*. A10.

11