*587 McKEAGUE, J., delivered the opinion of the court, in which BOGGS, J., joined. CARR, D.J. (pp. 595-628), delivered a separate dissenting opinion.
OPINION
McKEAGUE, Circuit Judge.
The Equal Employment Opportunity Commission (“Commission”) filed a complaint against Peoplemark, alleging that Peoplemark had a blanket, companywide policy of denying employment opportunities to persons with felony records and that this companywide policy had a disparate impact on African Americans. As it turned out, the alleged companywide policy did not exist. Eventually, the Commission dismissed its claim through joint motion of the parties. Peoplemark moved for costs and attorney’s and expert fees. The district court awarded Peoplemark fees and costs totaling $751,942.48. This award included attorney’s fees from October 1, 2009, through the end of the litigation, finding that as of October 1 the Commission’s claim was unreasonable to maintain. The award also included all of People-mark’s expert fees. The Commission appeals the district court decision and argues that the district court abused its discretion when it imposed attorney’s and expert fees. Alternatively, the Commission argues the fees were excessive.
We affirm the district court’s decision.
FACTS
Defendant-appellee Peoplemark is a temporary-employment agency with offices in Michigan, Tennessee, Kentucky, and Florida. Peoplemark uses an application form that asks applicants whether they have a felony record. Peoplemark also conducts an independent investigation into the criminal records of all applicants.
In 2005, Sherri Scott, an African American with a felony conviction, submitted an application to Peoplemark’s Grand Rapids office. Peoplemark did not refer Scott for employment. Because of this refusal, Scott filed a charge of discrimination with the Commission. She alleged that People-mark denied her application because of her race and felony record.
The Commission launched an investigation in light of Scott’s allegations. As part of the investigation, the Commission communicated -with Judd F. Osten, Peoplemark’s Vice President and Associate General Counsel. Osten informed the Commission that Peoplemark had a companywide policy of rejecting felon applicants. Osten indicated that Peoplemark’s policy was not the result of a request from its clients. However, he did state that Peoplemark’s clients knew of the policy and that some had told Peoplemark not to refer felons.
As part of the investigation, the Commission also subpoenaed, and Peoplemark provided, more than 18,000 documents. According to Peoplemark, the documents proved that Peoplemark did not have a companywide policy of rejecting felon applicants because the documents showed that Peoplemark had referred felons to job opportunities.
In September 2007, based upon the investigation, the Commission sent a letter to Peoplemark stating that the Commission had reason to believe that Peoplemark had violated Title VII. The Commission relied on the statements of Osten and its belief that Peoplemark had a blanket, companywide policy of rejecting felon applicants, a policy which the Commission argued had a disparate impact on African Americans. The parties’ attempts to conciliate failed, and on September 29, 2008, *588 the Commission filed the current action on behalf of Scott and a class of similarly-situated persons. The complaint alleged that
[s]inee at least May 2005, Defendant Employer has engaged in unlawful employment practices at all of its facilities in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a). The Defendant’s unlawful employment practices include maintaining a policy which prohibits the hiring of any person with a criminal record. Such policy has had and continues to have a disparate impact on African American applicants.
R. 1, Compl. at 2, Page ID # 2.[1]
The district court held a scheduling conference in January 2009. The subsequent case management order required the Commission to disclose its experts by the end of June 2009, and to submit its expert reports by the end of August 2009.
The Commission eventually identified 286 individual class members. The records provided by Peoplemark to the Commission indicated, however, that some of the class members did not have felony convictions and others who had felony convictions obtained employment through Peoplemark despite their criminal records.
In April 2009, Peoplemark formally informed the Commission for that first time that Peoplemark denied having a eompanywide policy of rejecting felon applicants.
The Commission asked for two extensions to the expert deadlines, one each in June and July 2009. Peoplemark opposed both motions. In response to the first request, the court extended both the date to name experts and the report deadline, though the court did not grant as long an extension as the Commission had requested. The court denied the second motion to extend.
In July 2009, Peoplemark provided the Commission with a copy of its e-database. The database again indicated that People-mark did not have a companywide policy of rejecting all felon applicants.
By the end of August 2009, Peoplemark had produced over 176,000 documents. In September, Peoplemark produced about two thousand previously unknown documents.
In September 2009, the Commission yet again filed a motion to extend the time to file expert reports. The Commission claimed that its statistical expert would be unable to finalize her report by the deadline and requested that the court extend the deadline to February 2010. The court ordered additional argument about whether the Commission’s statistical expert’s testimony was even necessary to determine if Peoplemark employed a categorical, companywide policy of refusing to refer felons.
On October 23, 2009, the Commission filed a supplemental brief, which responded to the court’s request for additional argument on the issue of whether the Commission’s statistical expert’s report was even necessary. The brief disavowed the theory of the case that Peoplemark had a discriminatory categorical company-wide policy. The Commission argued that the case hinged on the possibility that Peoplemark’s consideration of felony convictions when assessing applications had a disparate impact on African Americans. To determine if the case was viable, the Commission, through its expert, would need to analyze flow data and current work force data and conduct an adverse- *589 impact analysis. This, the Commission contended, could establish that People-mark’s actual policy had a disparate impact on African Americans.
The magistrate judge eventually granted in part and denied in part the Commission’s third motion for extension of time to file expert reports. The judge found that the Commission was dilatory in prosecuting the case. The magistrate judge extended the deadline for filing expert reports to December 31, 2009. The district judge affirmed.
Peoplemark timely filed its expert report in February 2010.
Though Peoplemark brought a motion for summary judgment on February 25, 2010, the parties agreed to voluntarily dismiss the case with prejudice on March 24, 2010. The dismissal provided that People-mark would be the prevailing party for purposes of determining who was entitled to fees under § 706(k) of Title VII, as amended at 42 U.S.C. § 2000e-5(k). The court granted the joint motion and dismissed the action on March 29, 2010.
Peoplemark thereafter moved for attorney’s fees, expert fees, sanctions, and costs.
PROCEDURAL HISTORY
A. Magistrate Judge’s Report and Recommendation
On March 31, 2011, the magistrate judge recommended that Peoplemark be awarded fees in the amount of $751,942.48, which included $219,350.70 in attorney’s fees, $526,172.00 in expert witness fees, and $6,419.78 in other expenses.
The magistrate judge found that “the complaint turned out to be without foundation from the beginning.” The magistrate judge recommended that the Commission should be held to the gravamen of its complaint — that Peoplemark had a blanket, companywide policy of refusing to refer felons to employment opportunities and that this policy had a disparate impact on African Americans. The magistrate judge then sought to determine when the Commission should have known that the case as pleaded was groundless.
The magistrate judge recommended that the Commission should have known the case was groundless as of October 1, 2009. The magistrate judge chose this date because it provided the Commission a little over a month to have reviewed the vast majority of the documents produced by Peoplemark. The magistrate judge found that “[i]t was certainly unreasonable to continue this burdensome litigation” after October 1 because the Commission should have known that the claim was groundless by that date. The magistrate judge also added that it was unreasonable for the Commission to maintain the litigation after the Commission knew it could no longer present an expert report.
The magistrate judge then went on to recommend that Peoplemark be awarded all of its expert witness fees, after finding that they were the kind of “out-of-pocket expenses normally charged to clients by attorneys which are recoverable as part of the statutory award of attorneys’ fees under Title VII.” The magistrate judge stated that Peoplemark’s expert was necessary — Peoplemark needed an expert to rebut the Commission’s experts. The magistrate judge also noted that People-mark had already paid its expert’s fee of $526,172.00,[2] and that Peoplemark’s expert had conducted an extensive analysis including a determination of how many of the 286 alleged victims had been hired. In light of these findings, the magistrate judge recommended that the Commission be assessed all of Peoplemark’s expert *590 fees, even those that accrued before October 1, 2009. The Commission tried to refute the charges by relying on its expert’s declaration that she was astounded by Peoplemark’s expert’s fee. However, the magistrate judge stated that comparing the two experts’ work was like “comparing apples to oranges” because People-mark’s expert had produced a report and the Commission’s had not; because the Commission’s expert had only spent 23.26 hours on her work, whereas Peoplemark’s expert had spent 123.55 hours; and because Peoplemark’s expert had done all of his analysis work in-house, which substantially increased costs, whereas the Commission’s expert had used an outside data-management company.
The Commission filed objections to the report and recommendation.
B. District Judge’s Opinion and Order
After reviewing the report and recommendation and the Commission’s objections, the district judge adopted the magistrate judge’s report and recommendation. The court rejected the Commission’s objection that the Commission could prove its case as pleaded without showing a blanket, companywide policy of refusing to refer felons. The court rejected the Commission’s argument that the proper date for assessing all fees was January 29, 2010, and its argument that Peoplemark’s expert fees were not sufficiently documented. The court found that all of Peoplemark’s expert fees should be awarded because they were out-of-pocket expenses normally charged to clients, were directly related to the disparate-impact theory, and “were an integral part of Peoplemark’s defense.”
The Commission now appeals this decision and argues that an award of any fees was inappropriate under the circumstances of this case. In the alternative, the Commission argues that the district court abused its discretion when it fixed an October 1, 2009, award date for attorney’s fees; when it imposed the entirety of the expert fees and not just those incurred on or after October 1; when it failed to find People-mark’s expert’s documentation inadequate; and when it failed to find Peoplemark’s expert fees excessive. Before turning to the Commission’s arguments we detail the standard of review.
ANALYSIS
A. Standard of Review
This court reviews a district court’s award of fees for abuse of discretion. Adcock-Ladd v. Sec. of Treasury, 227 F.3d 343, 348-49 (6th Cir.2000). “[T]he trial judge’s exercise of discretion ... is entitled to substantial deference, especially when the rationale for the award was predominantly fact-driven.” Id. at 349. “Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.” Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989). The district court abuses its discretion when it applies an erroneous legal standard, misapplies the proper legal standard, or relies on clearly erroneous facts. Adcock-Ladd, 227 F.3d at 349.
B. Underlying Legal Principles
Under 42 U.S.C. § 2000e-5(k), a court may award the prevailing party in a Title VII action “a reasonable attorney’s fee (including expert fees).” The Supreme Court annunciated the relevant standard for assessing attorney’s fees and other costs in Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). In Christiansburg, the Court explained that a court may award a prevailing defendant in a Title VII action attorney’s fees under certain limited circumstances:
*591 [A] plaintiff should not be assessed his opponent’s attorney’s fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney’s fees incurred by the defense.
Id. at 422, 98 S.Ct. 694. We apply the same standard against the Commission as against other litigants. Id. at 422 n. 20, 98 S.Ct. 694.
In assessing whether a district court abused its discretion when it granted attorney’s fees to a defendant, this court has previously considered factors including: “(1) whether plaintiff presented sufficient evidence to establish a prima facie case; (2) whether defendant offered to settle the case; and (3) whether the trial court dismissed the case prior to trial.... ” Balmer v. HCA, Inc., 423 F.3d 606, 615-16 (6th Cir.2005), overruled on other grounds by Fox v. Vice, — U.S. —, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011). A plaintiff establishes a prima facie case of disparate impact when “(1) plaintiff identifies a specific employment practice to be challenged; and (2) through relevant statistical analysis proves that the challenged practice has an adverse impact on a protected group.” Johnson v. U.S. Dep’t of Health and Human Servs., 30 F.3d 45, 48 (6th Cir.1994). We now turn to the Commission’s arguments.
C. Attorney’s Fees
The district court did not abuse its discretion when it found that the Commission could not prove its case as pleaded. As the Supreme Court explained in Christiansburg, a prevailing defendant in a Title VII action may be awarded attorney fees if the plaintiffs claim was “frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so.” Christiansburg, 434 U.S. at 422, 98 S.Ct. 694. A party alleging a disparate-impact theory must allege a specific employment practice in the complaint. See Johnson, 30 F.3d at 48; see also Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 642 (3d Cir.1993) (requiring plaintiff to plead specific employment practice in complaint); Kulkarni v. City Univ. of N.Y., No. 01 CIV. 10628(DLC), 2002 WL 1315596, at *2 (S.D.N.Y. June 14, 2002) (“Swierkiewicz does not, however, relieve plaintiff of the obligation to identify in his pleadings a specific employment practice that is the cause of the disparate impact.”); cf. Seasonwein v. First Montauk Sec. Corp., 189 Fed.Appx. 106, 111 (3d Cir.2006) (requiring in an ADEA case that the plaintiffs plead a specific employment practice to be challenged when alleging a disparate-impact claim). A specific employment practice is a necessary component of a plaintiffs claim. As is required, the Commission pleaded a specific employment practice — -a companywide policy of denying employment opportunities to felons. That policy did not exist, and the claim the Commission pleaded could not be proved.
To be sure, the Commission’s case was not groundless when filed. Osten’s incorrect statements that there was a company-wide policy gave the Commission a basis to file the complaint. However, the district court did not abuse its discretion by finding that the Commission could only rely on these statements up to a point.[3] When discovery clearly indicated Osten’s state *592 ments belied the facts, the Commission should have reassessed its claim. From that point forward, it was unreasonable to continue to litigate the Commission’s pleaded claim because the claim was based on a companywide policy that did not exist.
We are not focused on the Commission’s theory of the case, but rather, whether the claim was frivolous, unreasonable, or groundless, or whether the Commission continued to litigate after it clearly became so. As the Commission admits in its brief, it “pled a blanket policy.” The only employment practice it pleaded — and as a direct result, the only claim it pleaded— could not be proved. The dissent seeks to focus the reader’s attention on the claims that the EEOC could have brought. These questions serve only to distract us from the instruction in Christiansburg, which directs us to ask whether the claim that was alleged was frivolous, unreasonable, or groundless. It was.
Additionally, the factors addressed in Balmer also suggest that fees were permissible: The Commission could not prove a prima facie case of its claim because the claim was groundless; there is no indication that Peoplemark offered to settle the case; and the court dismissed the case upon the joint motion of the parties, a motion in which the Commission agreed that Peoplemark was the prevailing party for purposes of attorney’s fees. See Balmer, 423 F.3d at 615-16.[4] The district court, therefore, did not abuse its discretion when it found that it was unreasonable for the Commission to continue to litigate the claim beyond October 1, 2009.[5] Having determined that the award of attorney’s fees was proper, we next consider whether expert fees were also permissible under these circumstances.
D. Expert Fees
Section 2000e-5(k) permits a court to award the prevailing party in a Title VII action “a reasonable attorney’s fee (including expert fees).” A plain reading of the statute confirms that expert fees are included within, or a subset of, attorney’s fees. Because the district court did not abuse its discretion when it imposed attorney’s fees under Christiansburg, the district court likewise did not abuse its discretion when it imposed expert fees. The inquiry does not end here, however. We must also consider whether the district *593 court abused its discretion when it awarded attorney’s fees from October 1, 2009,'to the end of the litigation, and when it awarded expert fees incurred before October 1, 2009.
E. October 1 Award Date
The district court did not abuse its discretion when it awarded attorney’s fees from October 1 to the end of the litigation. By October 1,178,000 discovery documents had been provided. The Commission does not dispute that by October 1 it should have known that Peoplemark did not have a blanket, companywide policy and that it thus could not prove its claim based on that policy. As previously discussed, the Commission could rely on Osten’s statements only to a point. Once discovery established that no companywide policy existed, the Commission could no longer rely on Osten’s statements to proceed on its claim. In addition, in April 2009, People-mark informed the Commission that no companywide policy existed, and in July 2009, Peoplemark provided the Commission with a copy of an e-database that revealed that no companywide policy existed. The district court did not clearly err in finding these facts, and it did not abuse its discretion when it concluded that as of October 1 the Commission should have known it could not prove its claim as pleaded.
The Commission’s arguments to the contrary do not undermine the district court’s findings. First, the Commission alleges that the district judge abused his discretion by considering the Commission’s failure to file an expert report and argues that if the court relied on the failure to obtain an expert report, then the district court should have awarded fees from January 29, 2010, onward. Second, the Commission alleges that the district court erred in considering the statement of Mr. Donovan, the Commission’s in-house expert, who stated that it might be possible for an expert report to be completed within three months. Donovan’s estimate was based on discovery of an estimated 50,000 documents, and when the volume of discovery increased to 178,000 documents, the time frame should have been lengthened. Third, the Commission contends that it could have amended its complaint to state a viable claim.
The first two arguments are fatally flawed. The district court discussed the Commission’s failure to file an expert report and Mr. Donovan’s estimate after having already concluded that a fee award was appropriate. The discussion of the Commission’s failure to file an expert report does not undermine the district court’s prior conclusion that an award of attorney’s fees was appropriate under Christiansburg.
The Commission’s third argument is similarly flawed. That the Commission could have amended its complaint is beside the point. The Commission could not prove a case based on the complaint as filed, and the Commission never attempted to amend its complaint.
The Commission’s arguments being unpersuasive, the district court did not abuse its discretion when it awarded Peoplemark expert and attorney’s fees incurred after October 1, 2009. We must next consider whether the district court abused its discretion when it awarded Peoplemark its expert fees that predated October 1, 2009.
F. Pre-October 1 Expert Fees
This question raises the issue of whether an award of expert fees must cover only the same time as attorney’s fees. It would be tempting to hold that a court may only award expert fees temporally concurrent with awarded attorney’s fees. While it may well be reasonable in some cases for a district judge to award expert fees — as a subset of attorney’s fees — for the same time period that attor *594 ney’s fees are awarded, this does not mean that awarding expert fees incurred during a different period is always unreasonable.
The benchmark for awarding expert fees under the statute is reasonableness — a court may award “a reasonable attorney’s fee (including expert fees).” 42 U.S.C. § 2000e-5(k). The district court is given a considerable amount of discretion to consider what award of fees is appropriate under the facts of the case. In fact, there is nothing in the statute as written that requires temporal concurrence between expert and attorney’s fees.
Our holding that temporal concurrence is not required is confirmed by the fact that experts may proceed on a schedule distinct from that if the attorneys on the case. As required by Federal Rule of Civil Procedure 26(a)(2), a testifying expert must prepare a report that contains
(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii) the facts or data considered by the witness in forming them;
(in) any exhibits that will be used to summarize or support them;
(iv) the witness’s qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.
Fed.R.Civ.P. 26(a)(2)(B). Preparing an expert report will often require a considerable amount of time. Once an expert report deadline is set, an expert must promptly begin her work in order to complete the required report by the deadline, particularly in a complex case with stringent deadlines. An expert often works independently of the attorney to gather, convert into a reviewable format, and review the documents and other materials considered in forming the opinion that will underlie her opinion.
Because a failure to timely complete the report will prevent the expert from testifying at trial, which may be fatal to a party’s claim, experts cannot wait and see if a disposition motion is granted or if a case becomes frivolous before beginning their work. Until the court dismisses the case or the parties agree to a voluntary dismissal, all of the testifying expert’s work is necessary to the formulation of the expert’s opinion and the preparation of the expert’s report. In our view, so long as the prevailing party acted reasonably in hiring the expert, the fees incurred were reasonable, the work conducted was reasonable, and the standard from Christiansburg permits an award of expert fees, a court should be permitted to award a prevailing party’s expert fees independent of limitations on the award of attorney’s fees.
Accordingly, we hold that the district court did not abuse its discretion when it awarded the entirety of the expert fees incurred by Peoplemark. The district court concluded that Peoplemark’s expert was necessary to Peoplemark’s defense. The district court reviewed the expert fees incurred by Peoplemark and found that they were reasonable. Having already found that the court was permitted to award expert fees under Christiansburg, the court was within its discretion to award the entirety of Peoplemark’s expert fees.
G. Documentation of the Expert Fees
The Commission also argues that the district court abused its discretion because there was inadequate documentation of Peoplemark’s expert fees. We agree with the Commission that the party seeking fees must document the expert fees *595 incurred and the work done. The statute requires that the expert fees be reasonable, and if the moving party did not present the court with adequate documentation, there would be no basis for the court to decide whether the fee was reasonable.
We disagree with the Commission, however, that the documentation of People-mark’s expert fees was inadequate. The expert’s declaration in the motion for attorney’s fees contained the entirety of his bill, including entries for the data analysis by his firm. In total, the bill filled twenty-four pages and listed over 600 entries. Each entry itemized the work done and the time expended on the task. While the entries listed the work performed in a single word or short phrase — such as “research,” “document preparation,” and “telephone conference and review” — in the context of the entire bill, these general descriptions are enough for us to conclude that the district court did not abuse its discretion when it found that the fees were sufficiently documented.
H. Excessiveness of the Expert Fees
The Commission’s final argument is similarly unpersuasive. The Commission argues that the expert fees were excessive because the Commission’s expert found Peoplemark’s expert fees “astounding” and because, in her opinion, she would have charged hundreds of thousands of dollars less to do the same work. However, we cannot say that the district court abused its discretion when it concluded that the difference in cost between experts was reasonable in light of the facts that Peoplemark’s expert filed a timely report, whereas the Commission’s expert never completed a report; that the Commission’s expert had spent only 23.26 hours on her work, whereas Peoplemark’s expert had spent 123.55 hours; and that Peoplemark’s expert had done all of his work in-house, whereas the Commission’s expert had used an outside data management company. For these reasons, the district court did not abuse its discretion.
CONCLUSION
For the foregoing reasons, we AFFIRM the decision of the district comb.

. The complaint alleges that Peoplemark had a policy that prohibits hiring any person with a criminal record. The parties and the court below focused on whether Peoplemark had a policy that prohibits hiring any person with a felony record. We therefore review the case as decided by the district court and argued by the parties.

. Peoplemark was billed by its expert on a monthly basis.

. The Commission does not contest that it knew or should have known by October 1 that a companywide policy did not exist.

. The dissent also argues that the district court’s consideration of the Commission's presuit investigation is grounds for reversal. However, the district court did not base its decision to award attorney's fees on the presuit investigation. Instead, it based its award on the fact that, by October 1, the Commission should have known that its claim was groundless, a finding the Commission does not contest. The fact that the district court believed that the Commission should have known much earlier that its claim was groundless was irrelevant to its final determination to award attorney’s fees.

. The dissent faults our approach and argues that we are imposing a heightened pleading standard. Not so. The Supreme Court in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), held that a court cannot impose a heightened pleading requirement in employment-discrimination claims. We are not holding that the Commission needed to plead additional facts or do anything more than "create an inference that an employment decision was based on a discriminatory criterion illegal under the Act” at the pleading stage. Serrano v. Cintas Corp., 699 F.3d 884, 895 (6th Cir.2012) (internal quotation marks omitted). Our decision does not rest on the plausibility of the Commission's claims in its complaint — as pleaded, the claim was arguably plausible. But without a specific employment practice the pleading does not give fair notice of the plaintiff's claim, let alone state a plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). If the Commission had not pleaded a specific employment practice in its complaint, the claim would have been dismissed on defendant's motion.