**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0707n.06

**No. 20-5288**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 18, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| HP PELZER AUTOMOTIVE SYSTEMS, INC., | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

BEFORE:   BOGGS, STRANCH, and THAPAR, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**   HP Pelzer Automotive Systems, Inc., an automotive manufacturing company, appeals the district court's post-judgment order denying its motion for attorney's fees and costs filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k) and Rule 11, Fed. R. Civ. Pro. 11(c)(3).  A jury decided this Title VII retaliation case in favor of Pelzer after the district court denied Pelzer's motion for summary judgment and its motion to reconsider the summary judgment order.  On three separate occasions, the district court held that Black's claim of retaliation was not frivolous, unreasonable, or groundless.  Based on these rulings, the court determined that Pelzer was not entitled to attorney's fees.  Because the district court did not abuse its broad discretion in denying attorney's fees to Pelzer, we AFFIRM.

## I.   BACKGROUND

### A.   Facts

Pelzer is an automotive manufacturing facility located in Athens, Tennessee.   Larry Strange, Pelzer's plant human resources manager, hired Estela Black as a production worker in the fall of 2014.   Black attended a new employee orientation on October 6, 2014 with ten or twelve other new hires.   Strange led portions of the orientation, including presentations pertaining to company policies, roles, and the dress code.

At the orientation, during a fifteen-minute break, all the employees left the room except for Strange, Black, and another new employee, Sarah Kennedy.   Black approached Strange to learn more about the laptop he was working on.   Strange mentioned he was preparing a presentation on the dress code.   Strange stated that employees could not wear tank tops or "wife beater[s]"—a type of undershirt—but could wear shorts.   Black joked, "I [don't] want to see no crack."   Kennedy testified that she thought she and Black chuckled at the remark.   According to Black, Strange then said, "drop your pants, I'll take a picture of you and use you as an example."   Black did not respond. Shortly thereafter, other employees began to return to the room.

Within days after this incident, Black and other employees attended a meeting with Strange on the production floor.   At the close of this meeting, Black testified that Strange said, "the only way that you women understand is to be yelled at."

Black did not initially report to management either of Strange's comments. She felt "degraded" and "embarrassed" by his comments, but she needed her job and she was worried her report might affect her employment because Strange had hired her.   Black knew Pelzer had a sexual harassment policy because Strange trained her on it at the orientation.   The policy instructs "[a]ny employee who feels that he or she is being harassed […] to immediately report any incident(s) to

Human Resources." If he or she feels "that Human Resources did not, cannot, or will not consider the problem," then they should contact higher management. The policy further provides that, if Pelzer determines that an employee purposefully falsified a harassment complaint, the employee will be subject to discipline, up to and including discharge. The policy states that complaining employees may bring matters to higher management other than Corporate Human Resources if they feel that the matters are not being handled adequately. Pelzer further acknowledged in its written policy that no employee should be retaliated against for implementing the procedures of the harassment policy.

Despite her hesitation and because Strange was the manager of the plant's human resources department, Black reported both incidents to her team supervisor, Stacey Wade. Upon hearing that Black's complaint was against Strange, Wade shared the complaint with Plant Manager Eric Weiss. Shortly thereafter, Weiss asked Wade to send Black to his office to speak with him. Weiss asked another female employee, Donna Pickel, to join him in his office before Black shared her complaint. Pickel took notes. During the meeting with Weiss, Black recounted the two incidents involving Strange and also discussed two other unrelated incidents involving other employees. Black identified co-workers Sarah Kennedy and Katherine Morris as witnesses to Black's remarks.

After Weiss spoke with Black, he spoke to Strange. Strange said "the questionable remark" did not occur. He denied telling Black "to drop her pants" and let him "take a picture of her butt crack." Weiss did not ask Strange if he made the comment that women understand only if they are yelled at.

A week after making the report, Black approached Weiss on the production floor during her break and attempted to receive an update on her claim. Weiss told Black that he "didn't have time to look into [her complaint]" and "[h]e couldn't find a phone number for [Kennedy]." Weiss

told Black she was being confrontational and ordered her to go back to her table and work. Pelzer's Chief Operating Officer, Stuart McRobbie, happened to be visiting the plant that afternoon. Black asked Weiss if McRobbie knew about her complaint. Weiss responded, "no, and I'd rather you not go over my head."

Black returned to her station, but after giving it some thought, decided to discuss her report with McRobbie. Black approached McRobbie and the two met on the production floor to discuss her harassment claim after Black finished work. McRobbie informed Black that Weiss had shared her report with him earlier that day and McRobbie acknowledged that Black and Weiss recounted the same facts to him. McRobbie followed up with Weiss, instructing him to "professionally handle the investigation."

After speaking to McRobbie, Weiss contacted Lynn Schnepp, Pelzer's Corporate Director of Human Resources. Weiss informed Schnepp that McRobbie had received a verbal complaint from Black. Schnepp instructed Weiss to interview Black so that he could better understand her allegations, obtain names of witnesses, interview any witnesses, and summarize his findings. Weiss did not tell Schnepp that he had previously spoken to Strange and that Black identified witnesses when he received her complaint. Schnepp kept no notes on the conversation. Schnepp was not aware of any experience Weiss had in investigating claims, but was "confident" he could handle it as plant manager. After speaking with Weiss, Schnepp called Strange to notify him that an employee who attended the new-hire orientation had made a complaint against him. Strange denied the allegations.

Weiss asked an office assistant, Jody Montieth, to join him for some of the interviews. Montieth worked closely with Strange and co-presented with him at the new-employee orientation. Montieth did not keep any notes of the interviews and "didn't see the relevance [of the

investigation]." She found the investigation "absurd" and thought "none of this was going to go anywhere."

Kennedy was the only employee Black identified as a witness to the incident during orientation. Kennedy left Pelzer two days after the new-employee orientation to begin a new job. Her new company supplied temporary employees to area businesses. Part of Kennedy's new duties required her to contact Strange to place temporary employees with Pelzer.

Weiss placed a brief phone call to Kennedy without Montieth. Initially, Kennedy was reluctant to get involved, was "guarded" on the call, and "probably" gave Weiss "limited" information. Kennedy testified that Weiss "probably" did not specify who made the allegation or who it was made against. In an affidavit, Kennedy stated that Weiss asked her generally whether "anything harassing or disturbing" happened during orientation, so she referenced Black's "butt cracks" comment, described it as unprofessional, and said that she would never have made such a remark. Weiss asked if Strange said anything about "butt cracks" and Kennedy said no. At her deposition, Kennedy testified that she may have chuckled with Black after the "butt cracks" remark, but she denied that Strange made any comment about Black pulling down her pants and taking a photo.

Weiss interviewed Morris with Montieth present. They asked Morris if she ever noticed or saw Strange on the floor or near Black or "anything odd going on." Morris said she did not observe Strange "treat . . . Black in a discriminatory way." Weiss did not provide Morris with any specific details of the allegations. Weiss subsequently misidentified Morris as a witness who was present at orientation, but she did not attend the orientation.

Weiss also chose to interview Theresa Miller, an employee who attended orientation with Black. Miller first said that Strange did not tell Black to "drop her pants." Yet later, Miller

admitted she was on break smoking and not in the room when the alleged misconduct occurred. Weiss did not recall exactly why he chose Miller as a witness.

Weiss sent Schnepp handwritten notes of his interviews with Kennedy, Morris, and Miller, but not a summary of the investigation as Schnepp had asked. The notes observed that Morris "knows nothing about any issue" concerning Black and Strange. The notes also observed that Kennedy "was reluctant to discuss any issues or come to the plant" and there was no mention of the "butt cracks" or "pants" comments.

Because Black's harassment complaint was not corroborated, Weiss and Schnepp concluded Black had lied. Weiss did not discuss with Schnepp whether Black's report was "purposefully falsified" as required by the sexual harassment policy to discipline a complaining employee. Weiss admitted that he could not think of a reason why Black would falsify a complaint and he was not aware of any other conduct indicating that Black was not a good employee. Nevertheless, Weiss and Schnepp agreed that Black was lying, and Schnepp determined that Black's employment should be terminated. Schnepp instructed Weiss to follow a particular protocol when presenting the investigation to Black. First, he should reveal the details of the investigation and ask if she had any comments or additional information. If Black had additional information, Weiss should follow up on it. If Black did not, he should then give her the option to resign or be terminated under the sexual harassment policy.

Weiss did not follow Schnepp's instructions. Weiss called Black to his office to speak with him, Wade, and Pickel. Weiss told Black that Kennedy had said that Strange did not make inappropriate comments to Black, and that Morris could not corroborate the second incident. Because Black's report could not be corroborated, Weiss explained, he believed she had made

false accusations. Black responded, "this is bullshit," and left the room. Black was terminated then escorted by Wade and Pickel to her locker to gather her belongings and out of the building.

### B.   Procedural History

Black filed an administrative charge with the Equal Employment Opportunity Commission (EEOC) alleging sexual harassment and retaliation in violation of Title VII. After an investigation, the EEOC filed a Title VII lawsuit alleging Pelzer retaliated against Black for complaining of sexual harassment. Black intervened as a plaintiff. The EEOC did not find cause on the harassment claim.

After the close of discovery, the district court denied Pelzer's motion for summary judgment and sanctions and held that the EEOC's claims were not frivolous. The district court subsequently denied Pelzer's motion for reconsideration, noting primarily that the motion restated the same facts and arguments that were presented on summary judgment.[1]

The case proceeded to a five-day jury trial. At the close of the evidence, the court denied Pelzer's motion for judgment as a matter of law. After five hours of deliberation, the jury returned a verdict in favor of Pelzer.

After the trial, the district court referred to a magistrate judge Pelzer's post-judgment motion for attorney's fees and costs in the amount of $637,303.93. Declining to revisit the prior denial of summary judgment, the magistrate judge determined that "[a] case substantive enough to submit to a jury is not frivolous, unreasonable, or without foundation," and recommended that Pelzer's motion for attorney's fees be denied.

---

[1] Pelzer's motion for reconsideration of summary judgment was initially filed incorrectly under Federal Rules of Civil Procedure 59(e) and 60(b). *See Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 518 (E.D. Ky. 2015) ("Neither [Rule 59(e) nor Rule 60(b)] provides an appropriate means to challenge a non-final order."). Pelzer later filed a motion to supplement its motion after EEOC filed its response observing that Federal Rule of Civil Procedure 54(b) is the only basis for relief.

The district court adopted the Report and Recommendation over Pelzer's objections, explaining that "this Court has already ruled three (3) times that this suit was not frivolous, unreasonable, or groundless—twice before the trial and once after hearing all the evidence." The court concluded that "it is unusual for a court to find that a case was 'frivolous, unreasonable, or without foundation' where it survived a summary judgment motion," and denied Pelzer's request for attorney's fees. It also denied Rule 11 sanctions, finding that Pelzer failed to comply with the court's procedural filing and service requirements and holding that sanctions did not apply as the case was not frivolous.

## II.    ANALYSIS

### A.    Standard of Review

"We review a district court's award or denial of attorney fees for an abuse of discretion." *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005). "[T]he trial judge's exercise of discretion . . . is entitled to substantial deference, especially when the rationale for the award was predominantly fact-driven." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 590 (6th Cir. 2013) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989)). This error may include application of an inaccurate legal standard, misapplication of the proper legal standard, or reliance on clearly inaccurate facts. *Id.*

### B.    Discussion

#### 1.    Attorney's Fees Under Title VII

Under Title VII, a court may award the prevailing party "a reasonable attorney's fee (including expert fees)." 42 U.S.C. § 2000e–5(k); *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct.

1642, 1645 (2016). In *Christiansburg Garment Co. v. EEOC*, the Supreme Court explained that a court may award a prevailing defendant attorney's fees only if the court finds that a plaintiff's claims were "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." 434 U.S. 412, 422 (1978); *Peoplemark*, 732 F.3d at 590–91. The *Christiansburg* Court also emphasized that "[t]o take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." 434 U.S. at 422.

We have explained that "[a]n award of attorney fees against a losing plaintiff in a civil rights action 'is an extreme sanction, and must be limited to truly egregious cases of misconduct.'" *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)). In *Riddle*, the district court dismissed plaintiffs' civil rights action on summary judgment and awarded defendants attorney's fees, having concluded that "[p]laintiffs' claims were frivolous, unreasonable, and without foundation." *Id.* at 546. We reversed the fee award, noting *Christiansburg's* admonition that "litigation is rarely predictable" because the law may change, decisive facts may not emerge until discovery or trial, and even if the facts appear questionable, a party may have had a reasonable ground to bring the suit. *Id.* at 547–48, 556. Even where a district court determines a plaintiff's claims are "erroneous as a factual matter," that alone "does not render her claim frivolous, unreasonable[,] or groundless." *Jones*, 789 F.2d at 1233 (noting the record contained nothing to indicate that plaintiff was "completely unjustified" in believing her discharge resulted from racial or retaliatory motives).

"Awards to prevailing defendants will depend on the factual circumstances of each case." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985). In *Lowery v. Jefferson County*

*Board of Education*, a First Amendment case, we denied an award of attorney's fees and costs to a prevailing defendant where Plaintiffs first survived a motion for summary judgment and then a motion for judgment as a matter of law, having presented sufficient evidence at trial to send the case to the jury. 586 F.3d 427, 438 (6th Cir. 2009). "Where, after discovery and trial, a material question of fact exists . . . it is hard to maintain that the act of filing the complaint was itself frivolous." *Id.*

When determining if a prevailing defendant should be entitled to attorney's fees, factors we consider include whether: (1) the plaintiff successfully alleged a prima facie case of discrimination; (2) the defendant offered to settle the case; and (3) the trial court dismissed the case before trial. *See Peoplemark*, 732 F.3d at 591. The record shows that the EEOC successfully alleged a prima facie case of retaliation, Pelzer did not offer to settle, the EEOC's claims survived various motions, and the case was ultimately decided by a jury.

Applying the appropriate burden-shifting framework under *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), the district court held that the EEOC established a prima facie case of retaliation. Construing the facts in a light most favorable to the EEOC, the court ruled that Black in good faith believed that Strange's conduct was sexual harassment and that she engaged in protected activity by reporting the incidents to Pelzer officials. In denying Pelzer's motion for summary judgment, the district court identified issues for a jury:

> The dispute over the quality of the investigation is material—if the investigation was so flawed as plaintiffs allege, then there could be no basis in fact for defendant to believe Black was lying. A reasonable jury could infer from this set of facts that defendant could not honestly believe Black was lying because defendant failed to conduct a thorough investigation. The quality of the investigation is a material fact, and while Courts "do not require that the decisional process used by the employer be optimal or that it left no stone unturned," *see Smith*, 155 F.3d at 807, determining the reasonableness of defendant's decision is a question best left to the jury.

Defendant's motion for summary judgment also included a request for sanctions—on the basis that Plaintiffs refused to dismiss their case—which the court denied because "plaintiffs' claim is not frivolous." The district court later denied two additional motions—one that Defendant called a motion to alter or amend the judgment, and another to reconsider denial of summary judgment. After the close of evidence at trial, the court denied defendant's motion for judgment as a matter of law. The district court again acknowledged material factual disputes and, viewing the evidence in the light most favorable to the EEOC, determined "the jury could 'reasonably find that the defendant did not reasonably rely on particularized facts in making the decision to terminate Ms. Black. Thus, the jury could reasonably find that defendant did not have an honest belief that Ms. Black purposely falsified her complaint.'" Finally, the district court denied the motion for attorney's fees because "this Court has already ruled three (3) times that this suit was not frivolous, unreasonable, or groundless—twice before the trial and once after hearing all the evidence."

On appeal, the Defendant relies on the honest belief rule. In this circuit, the rule allows for summary judgment on pretext to an employer that "reasonably and honestly relies on particularized facts in making an employment decision" even if that decision proves to be "mistaken" or "baseless." *See Babb v. Maryville Anesthesiologist P.C.*, 942 F.3d 308, 322 (6th Cir. 2019) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009)). *Babb* teaches that an honest belief claim must be a reasonably informed and considered decision and reversed the grant of summary judgment to an employer who relied on the honest belief rule but "overlooked too many genuine factual disputes." *Id.* at 323–24. To demonstrate that the basis for an employment action was honestly held, and not based on unlawful motive, an employer must produce evidence establishing "its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998); *Clay v. United*

*Parcel Serv.*, *Inc.*, 501 F.3d 695, 714 (6th Cir. 2007). Even when "the employer is able to point to the particularized facts that motivated its decision, the employee has the opportunity to produce 'proof to the contrary.'" *Clay*, 501 F.3d at 714 (quoting *Smith*, 155 F.3d at 807).

The protection provided by a claim of honest belief is not automatic. *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 533 (6th Cir. 2015). The rule does not apply if the employer is unable to produce evidence to support its employment action, *Smith*, 155 F.3d at 807, nor does the rule apply if the employer, when making its employment decision, "makes errors that are too obvious to be unintentional," *Smith v. Towne Properties Asset Mgmt. Co.*, *Inc.*, 803 F. App'x 849, 852 (6th Cir. 2020) (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012)).

Although no one factor is determinative, to serve as the basis for an honest belief, an investigation leading to termination typically must be thorough. In *Tingle v. Arbor at Hilliard*, 692 F.3d 523, 528–29 (6th Cir. 2012), we affirmed summary judgment for lack of pretext, relying on written evidence of the misconduct that led to the employee's termination as well as a prior disciplinary record. Similarly, in *Towne Properties,* we found that the employer "made an informed decision based on specific facts," where the honest belief derived from a multifaceted investigation that included: reviewing several pieces of written evidence, contacting secondary sources to confirm allegations, interviewing independent witnesses, and reviewing company records. 803 F. App'x at 851–52.

Here, the quality of Pelzer's investigation is disputed. Pelzer had not previously disciplined Black for misconduct. In fact, Black was hesitant to initially report her allegations, fearing that it would negatively affect her job. Weiss, with limited or no experience in investigations, led the inquiry and failed to properly identify, organize, and communicate with witnesses. Witness interviews by Weiss and Montieth, such as that of Morris, employed confusing or leading

questions. Weiss independently identified Miller as a witness though she had no information to offer and admittedly was taking a smoking break and not in the room when the alleged misconduct occurred. The investigation also raised questions of conflict of interest of the witnesses. Weiss marshalled Montieth to assist him, though she had a close relationship with Strange and stated that she found the investigation to be "absurd." The only potentially independent witness to the alleged misconduct at orientation, Kennedy, left Pelzer two days after orientation to work for a company providing temporary employees to businesses and she immediately began soliciting Strange and Monteith for Pelzer's business.

Schnepp gave Weiss clear instruction on how to present the investigation findings and conduct the meeting with Black, but Weiss failed to follow the protocol and may have attempted to conceal his inaction to Schnepp after he spoke to Strange. As a result, Black received no opportunity to address or further substantiate her complaint during her last meeting with Weiss, nor did she receive any warning prior to discharge or any opportunity to resign or be terminated under the sexual harassment policy. Lastly, Pelzer failed to identify any motive for why Black, a newly hired employee, might make false allegations against Strange. Weiss conceded that he could think of no reason why Black would lie, and was not aware of any other conduct indicating that Black was not a good employee.

These investigative issues taken together created a genuine dispute of fact as to whether it was reasonable for Pelzer to rely solely on its limited investigation to terminate Black's employment. The case went to trial on the disputed evidence concerning whether Weiss produced particularized facts upon which Pelzer could reasonably rely in firing Black. The district court did not "blindly assume that [Pelzer's] description of its reasons [were] honest." *Smith*, 155 F.3d at 807.

By comparison, in *Bagi v. City of Parma,* we awarded attorney's fees to defendants who prevailed against a First Amendment claim where plaintiffs admitted they issued their "letter without any direct knowledge that the statements made were true." 795 F. App'x 338, 343 (6th Cir. 2019). The district court granted summary judgment for the defendants on the ground that plaintiffs' First Amendment claim was "wholly without merit," "baseless," and that "there was no evidence to support it." *Id.* at 341, 343. The retaliation claim here was not "wholly without merit" or "baseless," and it was supported by evidence. In denying Pelzer's motions and sending the case to trial, the court carefully explained that the EEOC presented evidence of pretext for retaliation and set out the material disputes of fact regarding the reasonableness and quality of Pelzer's investigation. That the court denied Pelzer's motion for judgment as a matter of law at the close of the evidence and sent the case to the jury, makes it is "difficult to deem a claim frivolous." *See Lowery*, 586 F.3d at 438. The district court correctly characterized this record as "not the exceptional case justifying an award of attorney fees." It did not abuse its broad discretion in denying Pelzer fees on the ground that the case was not frivolous, unreasonable, or groundless.

2. Title VII Bad Faith

Pelzer contends that the district court abused its discretion by not assessing the EEOC's "bad faith" to award fees. Pelzer also argues that the EEOC engaged in bad faith conduct by bringing the case and in its litigation conduct.

In *Lowery*, we explained that awarding sanctions for bringing a suit in "bad faith" is appropriate if the underlying claim is frivolous as defined by *Christiansburg*. 586 F.3d at 438-39; *see also Christiansburg,* 434 U.S. at 422 ("[I]f a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for . . .attorney's fees"). For a non-

frivolous claim, courts should not merely rely on the intent of plaintiffs but should also consider "the *legal* basis for bringing the suit." *Lowery*, 586 F.3d at 439.

In denying attorney's fees, the district court found "that [the EEOC's] claim was not 'frivolous, unreasonable, or groundless' or pursued 'after it clearly became so.'" The district court also found that the defendant has "not demonstrated that it was a manifestation of bad faith." In light of the record and lack of evidence of bad faith, the district court did not abuse its discretion in denying Pelzer's request for attorney's fees.

### 3. Rule 11 Sanctions

Finally, Pelzer contends that the district court should have imposed attorney's fees *sua sponte* under Federal Rule of Civil Procedure 11 due to the EEOC's litigation conduct. The power of the court to act on its own initiative in awarding attorney's fees is implicit in the language of Rule 11. *See* Fed. R. Civ. P. 11(b)(1)-(3); *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368 (6th Cir. 1996). This power should be exercised with restraint; "[g]enerally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 516 (6th Cir. 2002).

The district court denied Rule 11 sanctions because (1) Pelzer did not explain why sanctions were appropriate to warrant deterrence rather than nonmonetary measures; (2) Pelzer failed to comply with procedural filing and service requirements; and (3) the court previously determined sanctions were inappropriate because EEOC's claim was not frivolous. Given Pelzer's procedural failures and the record indicating the EEOC's claims were not frivolous, the district court did not abuse its discretion in reaching these conclusions.

## III.   CONCLUSION

The district court properly exercised its broad discretion in denying Pelzer's motion for attorney's fees.  For the reasons stated herein, we AFFIRM the district court's denial of attorney's fees.