NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0888n.06
Filed: December 12, 2006

No. 05-2453

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **CURTIS J. GRANDERSON**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **UNIVERSITY OF MICHIGAN**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee*. | ) | |

BEFORE: DAUGHTREY and COLE, Circuit Judges; RESTANI, Judge.[*]

**R. GUY COLE, JR., Circuit Judge.** This case involves the appeal of the district court's

dismissal of a racial-discrimination claim brought by Curtis J. Granderson, Plaintiff-Appellant,

against his employer, the University of Michigan ("University"), Defendant-Appellee, under Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq*. For the reasons that

follow, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**  On January 2, 2001, the University fired

Granderson, a long-time food-service worker. More than a year after his termination, on March 21,

2002, Granderson filed a charge with the Michigan Employment Relations Commission

_____

[*] The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade,
sitting by designation.

("MERC")—a state agency that resolves labor disputes through the appointment of mediators, arbitrators, and factfinders. In his charge, Granderson asserted federal claims against the University under the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"), in addition to numerous grievances against his union under Michigan's Public Employment Relations Act ("PERA"). Absent from his charge was any claim of racial discrimination. Because the MERC lacks authority to enforce either the FMLA or the ADA and also lacks authority to remedy PERA violations that occur more than six months prior to the filing of a charge, the MERC dismissed all of Granderson's claims.

On January 5, 2004, three years after his termination, Granderson filed suit pro se in federal district court against the University and Tom Rhodes, his supervisor, alleging he was unlawfully fired because he is African-American and because of psychological disabilities. Granderson further alleged he experienced harassment, unfair criticism, false accusations, and retaliation during his time with the University because of his race and disabilities. The complaint contained three counts alleging numerous federal- and state-law violations.

On January 21, 2004, the district court dismissed Granderson's supplemental state-law claims without prejudice, leaving Granderson with claims under Title VII; the ADA, 42 U.S.C. § 12101 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; and 42 U.S.C. § 1983. After committing a series of procedural errors—one resulting in the dismissal of Rhodes as a defendant following a total failure to serve him with process—Granderson retained an attorney and, on March 17, 2005, filed a First Amended Complaint, which omitted all his previous claims except one count of racial discrimination in violation of Title VII. Rather than answering Granderson's complaint,

the University filed a motion to dismiss for lack of subject-matter jurisdiction arguing that Granderson failed to exhaust administrative remedies by neglecting to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The district court granted the University's motion to dismiss, explaining that a plaintiff in a Title VII case must first file a timely charge of discrimination with the EEOC and receive a right-to-sue letter before filing suit in federal court. Because Granderson failed to file such a charge and could provide no valid excuse for this failure, the court dismissed with prejudice Granderson's Title VII claim—his only remaining claim.

On July 19, 2005, some four-and-a-half years after the University terminated him and a year-and-a-half after filing his Title VII action in federal court, Granderson filed a charge with the EEOC and received a right-to-sue letter. Granderson now appeals the dismissal of his Title VII action.

## II. DISCUSSION

"In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of racial discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989) (citing 42 U.S.C. § 2000e-5(b)); *see also Morgan v. Washington Mfg. Co.*, 660 F.2d 710, 711 (6th Cir. 1981) (explaining the purpose of Title VII's administrative scheme is "to encourage reconciliation and arbitration of employee grievances prior to litigation"). It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ("right-to-sue letter"). *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1486 (6th Cir.

1989) (citing 42 U.S.C. § 2000e-5(f)(1) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973)). The proper exhaustion of administrative remedies gives the Title VII plaintiff a green light to bring an employment-discrimination claim in court. *See, e.g.*, *Patterson*, 491 U.S. at 181 ("Only after . . . the plaintiff has obtained a 'right to sue' letter from the EEOC, may he or she bring a Title VII action in court."). Granderson acknowledges he never filed a charge of discrimination with the EEOC and never received a right-to-sue letter before filing the underlying Title VII action.

On appeal, Granderson first argues that he attempted to proceed with available EEOC administrative remedies but, because he was not alleging any form of workplace discrimination, the EEOC intake supervisor directed him to "visit" the National Labor Relations Board ("NLRB"). Once at the NLRB, Granderson claims he was then referred to a MERC agency in Lansing, Michigan, where he ultimately filed his charge. As such, Granderson argues that he constructively exhausted the administrative-filing requirement by filing a charge with the MERC.

This argument fails for several reasons. First, even if we were to assume that filing a charge with the MERC is tantamount to filing a charge with the EEOC, which it is not, Granderson was late in invoking the administrative process. A Title VII plaintiff must file a charge with the EEOC within 180 days after the occurrence of the alleged discriminatory employment practice or within 300 days, if the claimant has "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e-5(e)(1). Here, Granderson waited over 400 days after the University terminated him before filing a charge with the MERC, well outside both the 180-day and 300-day filing requirements. Second, Granderson did not allege a Title VII discrimination claim in his charge before the MERC such as to put the University on notice of a

potential claim of racial discrimination. The only claims Granderson alleged against the University related to (1) improper notification of his rights under the FMLA and the ADA, and (2) improper termination at the close of his FMLA leave and the start of his ADA leave. These factual allegations were insufficient to put the University on notice that Granderson perceived himself to be the victim of discrimination. *Cf. Dixon v. Ashcroft,* 392 F.3d 212, 218 (6th Cir. 2004) (applying the "scope of investigation test" to determine whether factual allegations were sufficient to put the EEOC on notice that the claimant perceived himself to be a victim of racial discrimination). In sum, even if we were to consider Granderson's MERC charge equivalent to an EEOC charge, it would still not provide a green light to bring a Title VII action in court: Granderson did not file his charge on time, nor did the charge contain a claim of racial discrimination.

Next, Granderson argues, in essence, that Title VII's exhaustion requirement should be equitably tolled as he has now filed a charge with the EEOC. *See, e.g., Truitt v. County of Wayne*, 148 F.3d 644, 646 (6th Cir. 1998) (explaining that the exhaustion requirement is a precondition "that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling") (citation omitted). Granderson attributes his four-year delay in filing charges with the EEOC to being "bed ridden and house bound" with a pain level that was "10+." These reasons do not, however, exempt him from Title VII's timely filing and exhaustion requirements. *See Lomax v. Sears, Roebuck & Co.*, No. 99-6589, 2000 WL 1888715, at *6 (6th Cir. Dec. 19, 2000) (per curiam) ("[A]ll [Title VII] claimants, including pro se claimants, have a responsibility to meet the requirements of the law . . . ."); *see also Lattimore v. Polaroid Corp.*, 99 F.3d 456 (1st Cir. 1996) ("[P]ro se status does not relieve [a plaintiff] of the obligation to meet procedural requirements established by law.").

Granderson has simply presented nothing persuasive to excuse his lengthy delay in filing a charge with the EEOC.

Finally, Granderson argues that his attorney was incompetent, missed hearings, did not answer motions, did not submit briefs, met with Granderson only to tell him that his case had been dismissed, and refused to explain the district court's judgment dismissing the case. Even if these claims are correct, they do not excuse Granderson's delay in seeking relief before the EEOC. Granderson failed to file a charge with the EEOC for over four years and waited over 400 days before filing a charge with the MERC. Granderson's attorney cannot be blamed for this delay, as Granderson had not yet retained an attorney during most of this time.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.