**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4028
_____

BARRY YOUNG,
                              Appellant

v.

LOCAL 1201 FIREMEN & OILERS UNION
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 07-cv-03576 )
District Judge:  Honorable Louis H. Pollak

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 9, 2011
Before:  SCIRICA, SMITH and VANASKIE, Circuit Judges

(Opinion filed:  March 15, 2011)

_____

OPINION
_____

PER CURIAM

      Pro se appellant, Barry Young, appeals from the order of the United States District

Court for the Eastern District of Pennsylvania entering judgment in favor of appellee

Local 1201, Firemen & Oilers Union ("Local 1201" or "Union") and dismissing his

complaint.  For the reasons that follow, we will affirm the District Court's judgment.

## I.

Since the facts underlying the instant appeal are well-known to the parties, only a summary is provided here. Young, who is African American, began his employment with the School District of Philadelphia ("School District") on December 9, 2002, when he was hired as a Building Engineer Trainee. He was subsequently promoted to a Building Engineer. During his employment, Young was a member of Local 1201. Young asserts that his problems with Local 1201 began almost immediately.

Young's need for the assistance of Local 1201 representatives arose within the first month of his employment as he was accused of stealing just two weeks after being hired. A hearing to determine whether he should be discharged was held on January 23, 2003. Prior to the January hearing, he provided union president Michael McGinley with information regarding his work history which he thought might be useful. For whatever reason, McGinley – who is Caucasian – failed to bring the documents to the hearing. McGinley had a half-hour closed-door meeting with Young's supervisor Timothy McCollum and the hearing officer. Despite McCollum's recommendation that Young be discharged, his employment with the School District was not terminated. According to Young, he was only spared termination because of a subsequent phone call from his state representative.

Young's next encounter with Local 1201 occurred when he spoke to Ron Ellis, the Union's substance abuse program representative. Young states that he suffers from depression and found himself "self-medicating" with alcohol, cocaine, and crack. At Ellis' insistence, Young attended a rehabilitation program in Florida from January 10,

2004, to February 13, 2004, and subsequently continued with outpatient rehabilitation in Pennsylvania. After reporting back to the School District, Young signed an "Employee Notice of Self-Referral" on March 16, 2004. Young contacted Ellis – who is African American – a second time on June 22, 2004, when he found himself depressed and drinking. According to Young, Ellis once again required him to attend the Florida rehabilitation center. Young stayed in the Florida facility for approximately thirty days beginning on June 22, 2004, and again attended outpatient rehabilitation back in Pennsylvania. Young did not sign a notice of self-referral for his second rehabilitation stay.

The School District coded the first two days of each of Young's stays at the Florida rehabilitation center as unexcused absences. A hearing on the first two of these absences was held in April 2004. Young was represented at the hearing by Ellis and the vice president of Local 1201, Ernest Bennett, who is also African American. Apparently, the School District official indicated that the absences would be removed if Ellis telephoned the official the next day, but Ellis never called and the unauthorized absences remained on Young's record. Young also received a disciplinary letter for the pair of unexcused absences from his June 2004 rehabilitation stay. According to Young, neither Ellis nor Bennett assisted him in dealing with the issue despite his requests for their help.

Young became eligible to return to work shortly after passing a return-to-duty drug test on June 9, 2005. As provided for by Section 5.6 of the Policy on Substance Abuse ("PSA") contained in the Collective Bargaining Agreement which governs the relationship between Local 1201 and the School District, Young was subject to

3

unannounced follow-up drug and alcohol testing. One such test was conducted on October 17, 2005, and Young tested positive for cocaine. Several days later, on October 21, 2005, Young was summoned to the office of School District Official Carol Kenney, where he was informed of the positive test results and provided a memorandum explaining that a termination hearing was scheduled for October 25, 2005. Ellis appeared at this meeting. Shortly after his arrival, Ellis stated loudly to Young that the sample tested positive, that Young was high at the moment and that he would be fired. Ellis made this same statement in the presence of others as well. During the meeting, both Young and Ellis requested that Young's "split sample" from the October 17th specimen be tested.

After the October 21st meeting, Young complained to McGinley about Ellis and requested representation by another Local 1201 representative. McGinley denied the request. While en route to the termination hearing on October 25, 2005, Ellis told Young he would be terminated if he did not resign. Ellis also informed Young that his split sample had tested positive for cocaine, although it was later learned during discovery that the School District did not test the split sample. According to Young, Ellis "coerced" him into signing a form resignation letter, a letter Ellis would later refuse to allow Young to withdraw.

Young ultimately filed a complaint on March 28, 2006, with the Pennsylvania Human Relations Commission ("PHRC"), alleging that Local 1201's conduct at the time of his termination was discriminatory. By letter dated May 14, 2007, the PHRC notified Young of its inability to conclude that a violation of the Pennsylvania Human Relations

4

Act, 43 Pa. Cons. Stat. § 951 et seq. ("PHRA"), had been established. The PHRC also notified Young that he had two years to file a complaint in the court of common pleas "based on the right to freedom from discrimination granted by the PHRA."

**II.**

On August 30, 2007, Young commenced suit against Local 1201 in the United States District Court for the Eastern District of Pennsylvania on the basis of the actions it took during his term of employment with the School District. Young asserted that Local 1201 engaged in unlawful acts of discrimination and retaliation based on race in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., and the PHRA. In particular, Young alleged that Local 1201 failed to represent him when he was terminated in October 2005, and when he requested representation in disciplinary actions for unauthorized absences. Young also alleged a defamation claim under Pennsylvania law based on statements made by Local 1201 in its statement filed with the PHRC and statements made by Local 1201 representative Ellis in the presence of others.

At the close of discovery, Local 1201 filed a motion for summary judgment. In a Memorandum Opinion and Order entered on September 30, 2009, the District Court granted that motion and entered judgment in favor of Local 1201. The District Court concluded that Young failed to establish a prima facie case of discrimination under Title VII insofar as he failed to establish that the actions of Local 1201 or representative Ellis were motivated by some discriminatory animus. While recognizing that Young's history with Ellis was contentious, the District Court noted that Young himself stated that he did not believe Ellis sent him to the Florida rehabilitation program "because of [his] race" or

"as a form of discrimination." See Dist. Ct. Mem. Op. at 9. Young likewise could not say he believed that Ellis' actions in October 2005 were racially motivated, nor could he point to "any one person" in Local 1201 who discriminated against him on account of his race. Id.

Young's attempt to have the District Court infer discrimination when comparing the manner in which Local 1201 treated him to that of two white building engineers who failed one drug test each and were not forced to resign fared no better. The District Court agreed with Local 1201 that white "Employee C" is the proper comparator. Employee C self-referred twice, subsequently failed a drug test and then, pending a termination hearing, ultimately signed the same resignation letter as did Young. The District Court concluded that Local 1201's treatment of both employees was consistent and "substantively symmetrical." Id. at 10. Even assuming *arguendo* that Local 1201 failed to properly represent the two employees, there was no evidence presented to suggest that its failure to do so was racially motivated.

To the extent Young's claim for discriminatory breach of the duty of fair representation was intended to extend to McGinley's actions during the October 2003 termination hearing, the District Court concluded that such a claim would fail insofar as there was no evidence presented that Local 1201 held any "subjective hostility" towards Young or that any such hostility "adversely affected the union's representation." Young himself stated that he was not aware, back in 2003, that McGinley was discriminating against him because of his race. The District Court thus concluded that Young's conspiracy claim was too speculative to survive summary judgment. Id. Moreover,

6

Young was not terminated after the 2003 hearing. Accordingly, there was no evidence presented to indicate that McGinley's actions adversely affected Local 1201's representation, or that McGinley's actions were arbitrary or taken in bad faith.

The District Court disposed of Young's claims that Ellis and Bennett failed to deal with his unexcused absences and that Ellis acted aggressively toward him with little discussion as the District Court found that there was simply no evidence presented regarding a discriminatory animus. Once again, Young himself stated that he was unaware of racial animosity on the part of either Ellis or Bennett during the relevant periods. A lack of evidence to support a finding of discriminatory animus likewise proved fatal to Young's breach of fair representation claim with respect to Ellis' false statement regarding the split sample test and his failure to ensure that the second test had been performed.

The District Court determined that summary judgment in favor of Local 1201 was also warranted on Young's claim that the Union retaliated against him "for continuously demanding representation against [his] former employer." According to the District Court, Young could not prevail on such a claim given his failure to engage in any activity protected by Title VII. While Young requested repeated representation from the Union with respect to his absences coded as unexcused, Young's motivation in doing so was to avoid termination on the basis of too many unexcused absences – not because his race factored into the absences being coded as unexcused.

Young's final claim for defamation under Pennsylvania law was disposed of by the District Court on statute of limitations grounds. Pennsylvania has a one year

limitations period for defamation claims. See 42 Pa. Cons. Stat. § 5523. The events supporting Young's claim occurred on October 21, 2005, when Ellis commented that Young was high, and on June 6, 2006, when Local 1201 incorrectly reported in its PHRC position statement that Young's split sample tested positive for cocaine. Young's complaint, however, was not filed until August 30, 2007. The District Court rejected Young's contention that the limitations period was equitably tolled on account of the information contained in the "Notice of Complainant's Rights" he received from the PHRC, wherein he was advised that he had two years to file a complaint in the court of common pleas. The District Court rejected Young's contention, emphasizing that the PHRC notice refers to a complaint "based on the right to freedom from discrimination granted by the Act," not a state defamation claim. See Dist. Ct. Mem. Op. at 14-15. The District Court further noted that federal district courts have consistently held "that the pendency of a discrimination charge before the PHRC … does not toll the statute of limitations for related Pennsylvania state tort claims." Id. at 15 (citations omitted). Finally, the District Court found that equitable tolling does not otherwise apply insofar as the discovery rule was not applicable to Young's claim and Local 1201 was not precluded from relying on the limitations period.

Given the foregoing analysis, the District Court concluded that summary judgment was warranted and entered judgment in favor of Local 1201. This timely appeal followed.

**III.**

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District

8

Court's grant of summary judgment is plenary and we must affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of material fact is one that could change the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

Initially, we note that Young does not raise any specific challenges in his informal brief other than to state that the District Court "failed to properly view facts presented by [him] concerning self-referrals, dates of absences and false statements submitted by counsel for defendant." See Aplt's Informal Brief at 1. Instead, Young asks this Court to review the facts of his two related civil actions docketed at Young v. Sch. Dist. of Phila., E.D. Pa. Civ. No. 06-cv-04485, and Young v. Tom Corbett, et al., E.D. Pa. Civ. No. 07-cv-03575, in conjunction with the instant appeal and to grant him a trial because the District Court "should have rejected all defendants [sic] motion[s] for summary judgment and proceeded to trial." See Informal Brief at 5. Other than for purposes of discovery, however, the underlying civil actions have not been consolidated in either the District Court or this Court. In fact, while Young appealed the District Court's judgment in

---

[1]   Young filed a timely motion for reconsideration, which was denied by the District Court in a Memorandum Opinion and Order entered on March 16, 2010. However, Young did not file an amended notice of appeal, nor was his appellate brief – which is dated May 11, 2010 – filed within 30 days of the entry of the District Court's March 16th order such that it can be liberally construed as the "functional equivalent" of an amended notice. Accordingly, the District Court's decision with respect to his reconsideration motion is not within the scope of this appeal.

Young v. Sch. Dist. of Phila. and that appeal has been docketed at C.A. No. 10-3536, the District Court has yet to enter a final order in the civil action of Young v. Tom Corbett, et al. Our review is thus limited solely to the District Court's decision disposing of the civil action underlying the instant appeal.

After a careful review of the record and the parties' briefs on appeal, we discern no error in the District Court's grant of summary judgment in favor of Local 1201. With respect to Young's assertions that Local 1201 and representative Ellis failed on several occasions to represent him or to do so adequately, in violation of Title VII and the PHRA, we agree with the District Court's determination that Young failed to offer any evidence that the Union's actions were motivated by discriminatory animus.[2] See, e.g., York v. Am. Tel. & Tel. Co., 95 F.3d 948, 955-56 (10th Cir. 1996) (To establish a prima facie Title VII claim against a union for a breach of its duty of fair representation, a plaintiff must show, inter alia, that "there was some indication that the union's actions were motivated by discriminatory animus."). In fact, Young himself stated on numerous occasions that he either did not believe or did not know whether his race or a discriminatory motive was behind the actions of Ellis or any other Union representative. See Dist. Ct. Mem. Op. at 9 – 12, citing relevant portions of Young's deposition testimony.

To the extent Young attempted to present a claim of discrimination through the circumstantial evidence of Local 1201's treatment of other employees, we can find no

---

[2] Title VII and PHRA are analyzed under an identical standard for purposes of deciding a summary judgment motion. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 409 (3d Cir. 1999).

10

fault with the District Court's decision to compare Young to Employee C given the apparent arguable position that Young had also twice "self-referred" under the terms of the PSA. Moreover, as noted by the District Court, even if the Union's representation was inadequate as to both Young and Employee C with respect to the self-referral and termination issue, there is no evidence in the record to suggest that racial animus was a motivating factor. Likewise, there simply was no evidence presented that the Union breached its duty of fair representation by acting in a manner that was arbitrary or in bad faith. See, e.g., Vaca v. Sipes, 386 U.S. 171, 190 (1967) (a breach occurs only when a union's conduct is "arbitrary, discriminatory, or in bad faith."). The District Court fully considered the evidence of record and properly concluded that there is no evidence from which a reasonable fact-finder could rule in Young's favor under Title VII and the PHRA.

We have carefully considered Young's remaining claim regarding retaliation. We find the retaliation claim unpersuasive and lacking in record support, either for the reasons fully explained by the District Court or for the reasons explained by appellee.[3] Based on the foregoing, we will affirm the District Court's judgment.

---

[3] Even affording Young's filings a liberal construction, we conclude that his defamation claim has been waived insofar as it has not been so much as mentioned in his pro se informal opening brief. An appellant is "required to set forth the issues raised on appeal and to present an argument in support of those issues in [his] opening brief." Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993); see Fed. R. App. P. 28(a)(5), (9). "It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005). The instant appeal presents no circumstances which counsel against application of that rule. See, e.g., Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) ("While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned." (internal citations omitted)).