RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ERICK PEEPLES; PERRY ANDERSON; VINCENT FIELDS; ARNOLD FREEMAN; RALPH GLENN, JR.; JAMAL JENNINGS; LEE JONES; ANTHONY MCCLOUD; EXANDER POE; DAVID RIVERA; SAMUEL SHACK,

　　　　*Plaintiffs-Appellants/Cross-Appellees*,

　　　*v.*

CITY OF DETROIT, MICHIGAN, Law Department; INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 344,

　　　　*Defendants-Appellees/Cross-Appellants*.

Nos. 17-1222/1250

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cv-13858—Sean F. Cox, District Judge.

Argued: April 25, 2018

Decided and Filed: June 1, 2018

Before: COLE, Chief Judge; GUY and DONALD, Circuit Judges.

---

## COUNSEL

**ARGUED:** Bruce B. Elfvin, ELFVIN, KLINGSHIRN, ROYER & TORCH, LLC, Independence, Ohio, for Appellants/Cross-Appellees. Jason T. McFarlane, CITY OF DETROIT, Detroit, Michigan, for Appellee/Cross-Appellant City of Detroit. Christopher P. Legghio, LEGGHIO & ISRAEL, P.C., Royal Oak, Michigan, for Appellee/Cross-Appellant International Association of Firefighters. James M. Tucker, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Bruce B. Elfvin, ELFVIN, KLINGSHIRN, ROYER & TORCH, LLC, Independence, Ohio, for Appellants/Cross-Appellees. Jason T. McFarlane, CITY OF DETROIT, Detroit, Michigan, for Appellee/Cross-Appellant City of Detroit. Christopher P. Legghio, Megan B. Boelstler, LEGGHIO & ISRAEL, P.C., Royal Oak, Michigan, for Appellee/Cross-Appellant International Association of

Firefighters.   James M. Tucker, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

––––––––––––––––––

**OPINION**

––––––––––––––––––

BERNICE BOUIE DONALD, Circuit Judge.   Plaintiffs-Appellants are eleven minority firefighters who were laid off by the City of Detroit ("City") in August 2012 as part of a reduction in force ("RIF").   Plaintiffs brought suit against the City and their union, the Detroit Fire Fighters Association, Local 344, IAFF, AFL-CIO ("DFFA"), alleging that they were laid off in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*   The district court granted summary judgment to both the City and the DFFA as to Plaintiffs' claims.   The court concluded that as against the City, only one Plaintiff had exhausted his administrative remedies to pursue a Title VII claim, but that even proceeding to the merits, Plaintiffs failed to present direct evidence or to establish a prima facie case under the circumstantial evidence approach, which includes a heightened burden in a RIF.   As to the DFFA, the district court concluded that Plaintiffs could not establish that the DFFA breached its duty of fair representation to the Plaintiffs, which the court held Plaintiffs must do to proceed with a Title VII claim against a union.   Finally, the district court denied the DFFA's motion for attorney fees and costs.   Plaintiffs appeal both rulings.   The DFFA cross-appeals the district court's denial of its motion for attorney fees and costs.

For the reasons set forth below, we **AFFIRM in part** and **REVERSE in part** the district court's judgment and **REMAND** for proceedings consistent with this opinion.

**I.**

On July 18, 2012, the City of Detroit filed for bankruptcy protection.   Prior to the filing, on July 2, 2012 the City notified agencies that the City would initiate RIF activities across different agencies, with a goal to lose 2,227 employees through various means, including layoffs. The Detroit Fire Department ("DFD") received notification on June 18, 2012, that the deadline for implementation of layoffs for the July 1, 2012 fiscal year was passing that day, and as of July

2, 2012, the DFD would not be in compliance with its 2012-2013 fiscal budget. Two days later, the City notified the DFFA by letter that layoff notices would be issued in accordance with the collective bargaining agreement ("CBA") between the parties and attached a matrix with the number of reductions to be made, detailed by position. According to this initial matrix, twenty-two firefighters would be laid off.

To effectuate the RIF, Human Resources Officer Roger Williams applied Human Resources Rule 10, which indicated that the RIF should be based on total city seniority, determined by total number of years as a city employee. Plaintiffs were not included in the group to be laid off. According to Williams, after he created the RIF matrix, the DFFA contested the City's methodology and argued that departmental seniority should apply to layoffs, rather than total city seniority. On July 30, 2012, the DFFA provided the City with lists by departmental seniority. Plaintiffs were included in this list. The next day, the DFFA filed Grievance #17-12, a class action grievance alleging that the City's proposed RIF violated the parties' CBA. On August 10, 2012, the City proceeded with the RIF by departmental seniority, as urged by the DFFA, and laid off twenty-seven firefighters, including ten of the Plaintiffs. Plaintiff Anthony McCloud was demoted from firefighter to fireboat deckhand.

In September 2012, the DFFA changed its position and agreed that total city seniority was in fact the proper method for layoffs under the CBA. Plaintiffs were recalled to work on October 29, 2012. Their layoff had lasted eighty days. In March 2013, the DFFA and the City finalized a settlement, which provided Plaintiffs with backpay, overtime pay, and medical expenses.

The parties agree that in May 2013, four of the Plaintiffs, David Rivera, Erick Peeples, Anthony McCloud, and Perry Anderson, timely filed discrimination charges against the City, as

they were filed within 300 days of their layoff on August 10, 2012.[1]  Rivera received a right to sue letter against the City on June 11, 2013.[2]  Plaintiffs filed similar charges against the DFFA.[3]

Plaintiffs filed the first amended complaint ("the complaint") on May 11, 2015.[4]  The complaint alleged one count for disparate-treatment race discrimination in violation of Title VII against the City and the DFFA.  The City moved for summary judgment on June 6, 2016, arguing that Plaintiffs could not establish a prima facie case of race discrimination under Title VII. More specifically, the City argued that the Plaintiffs, other than Rivera, could not show they were entitled to bring an action under Title VII because they had either not filed charges timely or had not received right to sue letters.  The City also argued that Plaintiffs could not establish a prima facie case of unlawful discrimination because they could produce neither direct evidence nor circumstantial evidence that they were targeted for layoffs for impermissible reasons.

The DFFA also moved for summary judgment on June 6, 2016, arguing that Plaintiffs' claim failed because the DFFA did not breach its duty of fair representation to the Plaintiffs, which it urged is "an essential component of a Title VII race discrimination claim against a union."  The DFFA also argued that Plaintiffs could not prove damages given that they had been reinstated and made whole, and neither compensatory nor punitive damages were available as a matter of law.  Finally, the DFFA argued that it should be awarded attorney fees and costs because Plaintiffs' claims were unmeritorious.

On January 26, 2017, the district court granted summary judgment to both Defendants on Plaintiffs' claims, but denied the DFFA's motion for attorney fees and costs, which the court

---

[1]Plaintiffs also argue for the first time on appeal that a fifth plaintiff, Exander Poe, timely filed a charge.  In its motion for summary judgment, the City claimed that Poe had not filed a charge against the City at all.  Plaintiffs failed to argue, or even mention, this issue in their brief opposing summary judgment.  Accordingly, the argument is forfeited.

[2]No other Plaintiff with a timely-filed EEOC charge received a right to sue letter from the EEOC.

[3]Neither the timeliness of charges nor receipt of right to sue letters is at issue in the appeal as against the DFFA.

[4]Plaintiffs filed their first complaint on September 10, 2013.  The district court entered an order to stay the proceeding on October 29, 2013 because of the City's ongoing bankruptcy proceedings.  On August 13, 2014, the City of Detroit notified the court that the bankruptcy stay had been lifted.

construed as a request for sanctions under Rule 11.[5]  As to the City, the district court held that only one Plaintiff's claim could proceed for failure to properly exhaust administrative remedies, but that it failed on the merits regardless.  In its first finding, the district court contended with almost no argument from Plaintiffs.  The City argued that only one Plaintiff, Rivera, was entitled to bring his Title VII claim, because only he had timely filed his EEOC charge and received a right to sue letter.  Plaintiffs did not respond to this argument.  The district court reviewed the record and concluded that only Rivera had properly exhausted his administrative remedies before bringing his Title VII claim.  The City next argued that the "single filing rule" should not be applied to allow Plaintiffs who had not exhausted their administrative remedies to "piggyback" on Rivera's claim, because Rivera alleged discrimination based on national origin, not race, and the facts of his claim were distinguishable from the other Plaintiffs.  Plaintiffs' response to the argument consisted of one word:

> 1. Does the "single-filer" rule under Title VII apply, so that each Plaintiff demonstrate [sic] that he is entitled to bring suit under Title VII?
>
> Defendant City says No.
>
> Plaintiffs Yes

Having reviewed the evidence in the record and in the absence of any counter-argument, the district court agreed with the City that only Rivera had exhausted his remedies and that the single filing rule should not apply to allow the remaining Plaintiffs to piggyback on his claim.  Proceeding to the merits and assuming *arguendo* that Plaintiffs could assert their claims, the district court held that Plaintiffs failed to establish a prima facie case of race discrimination either through direct evidence or circumstantial evidence with a heightened RIF standard.

As to the DFFA, the district court held that Plaintiffs failed to establish that the union had breached its duty of fair representation, which the court held was required under Title VII.  The court also held that Plaintiffs had been made whole with reinstatement and backpay relief and that other damages were unavailable.  The district court denied the DFFA's motion for attorney

---

[5]The district court also denied the City's motion for sanctions.  The City initially cross-appealed this ruling, but then moved to voluntarily dismiss the appeal. This Court granted the motion and dismissed the City's appeal.

fees and costs, however, concluding that Plaintiffs' claims were not "frivolous in their legal position such that sanctions should be imposed."

On March 10, 2017, Plaintiffs and the DFFA timely appealed.

**II.**

We review *de novo* a district court's grant of summary judgment. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish "by demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). In response, the nonmoving party must present "significant probative evidence" that will reveal that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere existence of a scintilla of evidence in support of the nonmovant's position will not suffice to avoid summary judgment. *Anderson*, 477 U.S. at 252.

**A.  Failure to Exhaust and the Single Filing Rule**

Congress gave the EEOC initial enforcement responsibility for employment discrimination claims brought under Title VII. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Accordingly, a plaintiff must first file an administrative charge with the EEOC within a certain time that alleges the wrongful conduct. *Id.* "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Id.* (quoting 29 C.F.R. § 1601.12(b)). A plaintiff must exhaust administrative remedies before filing suit in federal court. *Id.* at 362. To properly exhaust, a plaintiff must: "(1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act

upon the EEOC's statutory notice of the right to sue ('right-to-sue letter')." *Granderson v. Univ. of Michigan*, 211 F. App'x 398, 400 (6th Cir. 2006).

Here, Plaintiffs argue that the district court erred when it held that only Rivera had exhausted his administrative remedies as to the City. Plaintiffs urge that the single filing rule allows them to piggyback "onto a timely-filed charge and notice of right to sue of a named Plaintiff." They argue that failure to obtain a right to sue letter is a condition precedent to filing suit and not a jurisdictional defect, such that Anderson, McCloud, and Peeples should not be barred from pursuing their claims. The City responds that Anderson, McCloud, and Peeples did not receive right to sue letters and that Rivera is the only plaintiff who properly exhausted his administrative remedies.[6]

We must first determine whether Plaintiffs Anderson, McCloud, and Peeples exhausted their administrative remedies to determine how, and to whom, the single filing rule would be applied, if appropriate. Plaintiffs argue for the first time on appeal that the Acknowledgment of Settlement letters suffice for Plaintiffs Peeples, Anderson, and McCloud to have exhausted their administrative remedies under Title VII. Plaintiffs argue that failure to obtain a right to sue letter is not a jurisdictional defect but a condition precedent, and their receipt of Acknowledgment of Settlement letters satisfies the requirement of a right to sue. The City responds that Plaintiffs did not make any argument regarding the Acknowledgment of Settlement letters before the district court and accordingly that they abandoned the argument.

The arguments made at summary judgment reveal that Plaintiffs indeed ignored the City's contention regarding the Acknowledgment of Settlement letters. At summary judgment, the City argued that Plaintiffs' failure to present right to sue letters constituted a failure to exhaust under Title VII. Plaintiffs did not respond in their brief opposing summary judgment with even a mention of the City's argument that their claims should be dismissed for failure to secure right to sue letters. Their failure to make any argument below is further evident in the district court's treatment of the issue, as the court simply concluded that there was no evidence in

---

[6]The City also argues that Plaintiffs abandoned all arguments regarding administrative exhaustion before the district court. We noted Plaintiffs' failure to make any argument *supra* in Part I, but given that the district court proceeded to analyze, and reject, the single filing rule's application in this case, we will address it.

the record to indicate that Anderson, McCloud, and Peeples had received right to sue letters from the EEOC, and as such, that they could not assert Title VII claims against the City.

Plaintiffs are correct that failure to obtain a right to sue letter is a condition precedent, rather than a jurisdictional defect, which we have held is subject to waiver, estoppel, and equitable tolling. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392-98 (1982)). But Plaintiffs did not make any of these arguments before the district court. Plaintiffs had the opportunity to argue that the failure to obtain right to sue letters by Anderson, McCloud, and Peeples was waived, estopped, or should be equitably tolled, but they failed to do so. We review a district court's application or rejection of equitable tolling for abuse of discretion, which we find if the court "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Id.* at 560 (quoting *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995)) (internal quotation marks and alterations omitted). Equitable tolling is "sparingly bestow[ed]." *Id.* Plaintiffs made no argument for equitable tolling or that the claims should be able to proceed before the district court for any other reason, and we find no evidence that the district court relied on clearly erroneous findings of fact or improperly applied the law. Therefore, Plaintiffs' argument fails.

The next question is whether the single filing rule should apply to allow the remaining Plaintiffs to piggyback on Plaintiff Rivera's timely-filed charge. To answer, we first address the cases Plaintiffs cite in support of their argument that the single filing rule applies to this case: *Howlett v. Holiday Inns*, 49 F.3d 189, 195 (6th Cir. 1995), and *Bert v. AK Steel Corp.*, No. 1:02CV467, 2006 WL 1071872, at *8 (S.D. Ohio Apr. 24, 2006). In *Howlett,* this Court held that "[t]he single filing rule" allows one plaintiff's administrative charge to satisfy the charging obligations of other plaintiffs. 49 F.3d at 194. The rule is not limited to class actions but permits plaintiffs to join an individual action, "if the named plaintiff filed a timely administrative charge sufficient to permit 'piggybacking' by the joining plaintiff." *Id.* (citing *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057 (2d Cir. 1990)). "[A] charge will be adequate to support piggybacking under the single filing rule if it contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims

before a lawsuit if filed." *Id.* at 195.  While *Howlett* addressed piggybacking with charges that were not timely filed, but filed nevertheless, this Court has also stated that the single filing rule applies in another situation—when putative plaintiffs fail to file a charge at all.  *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 840 (6th Cir. 1994).  Most relevantly, we held "where a substantially related non-filed claim arises out of the same time frame as a timely filed claim, the complainant need not satisfy Title VII's filing requirement to recover."  *Id.* (footnote omitted); *see also Bert*, 2006 WL 1071872, at *8 (holding that the single filing rule applies to claims that arose from the "same discriminatory conduct" committed in the same time frame).

*Howlett* discusses multiple tests for determining when the single filing rule applies, quoting a summary from the Second Circuit.  49 F.3d at 195 (quoting *Tolliver*, 918 F.2d at 1057-58).  The court concluded that the application of an appropriate test depends on the size of the work unit.  If modestly sized, similarity of grievances suffices.  *Id.* at 195, 197-98.  If larger, "there must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim."  *Id.* at 195.  The appropriate test must serve the purposes of the notice requirement, which are notice and conciliation: notice to the prospective defendants and an opportunity for the EEOC to eradicate the offending practices through conciliation.  *Id.* (quoting *Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008, 1015 (7th Cir. 1988)).

In support of its point regarding work size, the court referenced cases involving a jail and a union local.  *Id.* (citing *Snell v. Suffolk Cty.*, 782 F.2d 1094 (2d Cir. 1986); *Allen v. Amalgamated Transit Union Local 788*, 554 F.2d 876 (8th Cir.), *cert. denied*, 434 U.S. 891 (1977)).  *Allen* involved a plaintiff group of fifteen black union members who sued their union for racial discrimination.  The court found that the thirteen plaintiffs seeking to pursue administrative remedies with the EEOC had sufficiently "alleged facts demonstrating that they were similarly situated and had received the same discriminatory treatment" as the two plaintiffs who had filed EEOC charges.  *Allen*, 554 F.2d at 882.  The court stated that "it would be nonsensical to require each of the plaintiffs to individually file administrative charges with the EEOC."  *Id.* at 883.  Plaintiffs' other case in support, *Bert*, is akin to *Allen*, as the plaintiffs were

all the same minority race, black, who were alleging racial discrimination. 2006 WL 1071872, at *1.

Here, Plaintiffs allege that they were all laid off at the same time because of either race or national origin discrimination. But as is clear, Plaintiffs do not allege the exact same claims—Plaintiff Rivera alleges national origin discrimination, and the remaining Plaintiffs allege race discrimination. Therefore, the question is whether national origin and race discrimination are "substantially related." If so, Plaintiffs should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under the single filing rule, which allows both untimely or never filed claims to be joined.

Plaintiffs cite no case law, nor do they argue, that discrimination claims for national origin are "substantially similar" to those of racial discrimination claims of a different group. While there may be overlap between the concepts of race and national origin themselves, *see, e.g., Village of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016), there is no case law to support the application of the single filing rule between the two distinct groups.

Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff Rivera's charge. The City was placed on notice that Rivera, and others similarly situated, were alleging discrimination in the layoff process, but only of claims involving national origin. This finding comports with the goals of the notice requirement—to put the employer on notice and allow the EEOC to conciliate claims that are shared by more than one plaintiff.

## B. Title VII - Prima Facie Case

Assuming *arguendo* that all Plaintiffs could assert their claims, we proceed to the prima facie case. Plaintiffs argue that they adduced record evidence sufficient to make their prima facie case of intentional discrimination under Title VII. The district court concluded that Plaintiffs failed to adduce either direct or circumstantial evidence to prevail on their discrimination claims. We likewise find, as explained below, that Plaintiffs fail to establish direct evidence proving a fact that requires no inferences or circumstantial evidence to create an inference of discrimination. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (addressing both burdens in a gender discrimination case).

### i. Direct Evidence

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* Inferences are not permitted. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Here, the district court concluded that the only evidence offered to demonstrate that race played a role in Plaintiffs' layoffs involved multiple levels of inadmissible hearsay, and even if admissible, required an unpermitted inference. On appeal, Plaintiffs assert that they have direct evidence—Peeples' testimony that Williams stated that the union wanted to "save" the white firefighters and submitted the layoff list including Plaintiffs to that end.

It is unclear if Williams' statement is hearsay or contains multiple levels of hearsay. Reviewing Peeples' deposition testimony, as Plaintiffs urge on appeal, does not illuminate. Plaintiffs only state in a footnote that Williams' statement is nonhearsay. Plaintiffs make no legal argument that Williams' statement is not hearsay, nor do they posit how he came to the conclusion that the DFFA was targeting minority firefighters for termination. Regardless, even if the statement was admissible and demonstrated any discriminatory intent, we do not find that it would constitute "direct evidence" of discriminatory motive by the City. Rather, the statement suggests that discriminatory intent motivated the actions of *the DFFA*. Peeples stated that Williams, a City employee, had concluded that *the DFFA* wanted to "protect the white boys." McCloud testified that he heard from Exander Poe that Williams said that *the DFFA* did not want to "lay those white boys off." Plaintiffs' argument therefore requires an inference that the City knew of and approved of that discrimination. Accordingly, we find that the statements do not constitute direct evidence of any motive the City harbored.

### ii. Circumstantial Evidence and a Reduction in Force

Next, we consider whether Plaintiffs can prove a prima facie case of discrimination with circumstantial evidence. To do so, the *McDonnell Douglas* burden shifting framework requires that Plaintiffs prove four elements: (1) they were members of a protected class; (2) they suffered adverse employment actions; (3) they were qualified for their positions; and (4) they were replaced by someone outside the protected class or were treated differently than similarly-

situated, non-protected employees. *See DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). The burden then shifts to the City "to articulate some legitimate, nondiscriminatory reason" for the employment decision. *See O'Donnell v. City of Cleveland*, 838 F.3d 718, 726 (6th Cir. 2016), *cert. denied sub nom. O'Donnell v. City of Cleveland, Ohio*, 137 S. Ct. 1206 (2017) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)) (internal citation marks omitted). If the City does so, then Plaintiffs need to demonstrate the reason given was pretextual. *Id.* at 727.

Both parties agree that only the fourth element is at issue, and further, that it is heightened because the case involves a RIF. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). In a RIF case, a plaintiff must show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.* Here, the district court concluded that Plaintiffs' failed to provide any of the above: their direct evidence was inadmissible, they did not put forth statistical evidence, and their circumstantial evidence failed because it did not allow the court to conclude that the layoffs had a disproportionate impact on blacks or Hispanics.

As discussed *supra*, Plaintiffs' direct evidence is unavailing. Plaintiffs' argument for circumstantial evidence—two sentences—similarly falls short. Plaintiffs merely assert that the fact that the City accepted the DFFA's layoff list "easily raises suspicion." In *Barnes*, an age discrimination case, we gave a few examples of valid circumstantial evidence: evidence that the plaintiff had superior qualifications to the replacement and evidence of statements that reveal a discriminatory motive. 896 F.2d at 1466. We stated that evidence "must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated" against the plaintiff. *Id.* Plaintiffs' cursory assertion that the City's acceptance of the layoff list from the DFFA "raises suspicion" falls well short of any of the abovementioned examples or requirements.

Regarding statistical evidence, the Plaintiffs include a table which compares the proposed and actual layoffs by racial makeup. Plaintiffs argue that there is a "stark" statistical disparity in the layoff numbers, between the City list and the DFFA list, which shifted from sixteen to three

layoffs of white firefighters, and ten to twenty layoffs of black firefighters.  By percentage, white layoffs dropped from 60% to 13%, and black layoffs jumped from 37% to 77.7%.  The City argues that Plaintiffs waived the argument, because Plaintiffs did not present the record evidence used to calculate the numbers above to the district court when they opposed the City's motion for summary judgment.  Plaintiffs had not compiled the evidence in a table, as they do in their brief on appeal, nor provided percentages to demonstrate that there was a statistically significant impact by race or national origin, nor did they break out for the court the difference between the City's original layoff list, the DFFA list, and the final list.  The City argues that Plaintiffs rely on evidence provided in connection with their motion to compel, which Plaintiffs did not include in their response briefing at summary judgment.  The district court was therefore unable to consider the argument of whether there was a statistically significant impact on the minority firefighters, which argues in favor of waiver.

Even reviewing the newly compiled evidence, however, we do not find that Plaintiffs' "statistical evidence" passes muster.  "Appropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class."  *Id.* at 1466.  To create that inference, "the statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity."  *Id.* (citing *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C. Cir. 1984), *cert. denied*, 471 U.S. 1115 (1985)).  In *Barnes*, we noted that the most obvious explanation for discharge in a RIF is "lower proficiency and/or random chance."  *Id.* We concluded that the plaintiffs had established a prima facie case with statistics that demonstrated three standard deviations from a hypothesized result.  *Id.* (citing *Castaneda v. Partida*, 430 U.S. 482, 496 n.17 (1977) ("As a general rule for such large samples, if the difference between the expected value and the observed number is greater than two or three standard deviations, then the hypothesis that the jury drawing was random would be suspect to a social scientist.")).

Here, Plaintiffs provide no similar type of analysis regarding the statistical significance of the disparities between the two layoff lists.  Therefore, we cannot determine if the results are statistically significant.  The City argues that Plaintiffs' evidence suffers from several additional

infirmities. First, the City argues that the data does not eliminate the most obvious explanation for the layoffs—seniority. Next, the City urges that limited data on the RIF precludes this Court from reviewing the impact of the RIF in all areas, including demotions, reductions in overtime, and the rescission of promotions. Finally, the City urges that the sample size is too small, which is insufficient to allow the court to infer discrimination.

The City likens the facts here to those in *Simpson v. Midland-Ross Corp.*, 823 F.2d 937 (6th Cir. 1987), in which this Court found the evidence was insufficient to support the plaintiff's prima facie age discrimination case. In *Simpson*, we noted that a sample size of seventeen was "suspect." *Id.* at 943. Here, the total sample is twenty-seven, which is a similarly small number from which to draw such a large inference. Indeed, we have previously recognized that "statistical evidence is of much greater value in discrimination cases where large numbers of employees are involved." *Equal Emp't Opportunity Comm'n v. New York Times Broad. Serv., Inc.*, 542 F.2d 356, 360 (6th Cir. 1976). The small sample size and absence of actual analysis are enough to render the evidence insufficient and unable to eliminate the nondiscriminatory explanation of seniority.

Further analysis is unhelpful to Plaintiffs. In *Simpson*, we noted that the plaintiff was not providing the Court with the whole picture of employee discharges, detailing discharges from the protected group but not the younger group. 823 F.3d at 943. The picture here is similarly incomplete. The City argues that Plaintiffs fail to account for the fact that only ten of the layoffs resulted from the switch between types of seniority to use as a basis for discharge. Plaintiffs also fail to present the racial makeup of the DFD before and after the RIF.

We have stated, "[u]nless the statistics, standing alone or in comparison, are sufficient to lead the mind naturally to the conclusion sought, they have no probative value; they do not move the proof one way or another." *Id.* So too here. Plaintiffs' statistical evidence is not probative. Furthermore, Plaintiffs provide no legal argument that their statistics are sufficient under this Court's precedent. Accordingly, Plaintiffs' discrimination claims against the City fail.

**C. Duty of Fair Representation and Title VII**

We now turn to Plaintiffs' appeal of the district court's grant of summary judgment to the DFFA. The district court concluded that under this Court's precedent, a plaintiff who sues a union under Title VII must establish that the union breached its duty of fair representation. Plaintiffs and the EEOC, amicus in this case, urge that the standards governing a duty of fair representation claim do not govern Title VII discrimination claims against a union, and that the district court relied on reasoning that has been withdrawn.

The district court relied on this Court's ruling in *Princess Wells v. Chrysler Group, LLC*, 559 F. App'x 512 (6th Cir. 2014), an unpublished opinion, to find that Plaintiffs were required to establish a breach of the duty of fair representation in order to proceed with a Title VII discrimination claim against the DFFA. In *Wells*, this Court adopted the Seventh Circuit test established in *Bugg v. International Union of Allied Industrial Workers of America, Local 507 AFL-CIO*, 674 F.2d 595, 598 n.5 (7th Cir. 1982), that required that Title VII plaintiffs prove a breach of the duty of fair representation. 559 F. App'x at 514.

The EEOC counters that the Seventh Circuit repudiated *Bugg* with its decision in *Green v. American Federation of Teachers/Illinois Federation of Teachers Local 604*, 740 F.3d 1104, 1105-07 (7th Cir. 2014), and held that establishing a Title VII claim did *not* require showing a violation of the duty of fair representation. *Green* is a succinct opinion in which the court stated that it was "withdraw[ing] the language" from previous opinions which conflated Title VII and hybrid breach-of-duty/duty-of-fair-representation elements. *Id.* at 1106. *Green* explained that Title VII was directed at both employers and labor organizations, which at the time of Title VII's enactment were empowered (or required) by certain states to discriminate against blacks. *Id.* at 1105. Not only were labor organizations included, but there was nothing to suggest that labor organizations should be treated differently. *Id.* Furthermore, when the Supreme Court established the elements for a Title VII prima facie case in *McDonnell Douglas*, it did not include any elements that depended on breaking a contract. *Id.* at 1106. Accordingly, a claim against a labor organization under § 2000e-2, as here, does not require a showing "that either the employer or the union violated any state statute or contract." *Id.* at 1107.

The Ninth Circuit has expressly endorsed the Seventh Circuit's reasoning, holding "that a prima facie disability discrimination claim against a union does not require that a plaintiff demonstrate that the union breached its duty of fair representation." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 851 (9th Cir. 2016). The court was persuaded by the Seventh Circuit's reasoning, which convincingly explained that "nothing in Title VII suggests that union members must demonstrate a breach of the union's contractual duty to provide fair representation before stating a claim for racial, religious or gender discrimination under Title VII." *Id.* at 858 (citing *Green*, 740 F.3d at 1105). The court also explained that a previous decision, *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874 (9th Cir. 2007), did not demand a different result. *Beck* found that the plaintiff had already proven a breach of the duty of fair representation on another claim, which happened to be sufficient to prove a Title VII violation because both violations were of the same nature—gender discrimination. *Id.* at 860. The court found no contrary authority and also summarized previous decisions in which Title VII and duty of fair representation cases had been treated separately. *Id.* at 860-61.

To the extent that there is counter-authority, the EEOC contends that it is primarily indicative of a lack of exploration of the issue, rather than an express position, regarding the requirements of a Title VII claim against a union. In *Young v. Local 1201 Firemen & Oilers Union*, 419 F. App'x 235, 240-41 (3d Cir. 2011), the Third Circuit cites to the Tenth Circuit's decision in *York v. American Telephone & Telegraph Company*, 95 F.3d 948, 955-56 (10th Cir. 1996), which itself cites back to a Seventh Circuit case that relied on the *Bugg* duty of fair representation factors. *Young* did not analyze whether the duty of representation factors should be analyzed in tandem with a Title VII claim. *Id.* Neither did the Second Circuit. *McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x 44, 49 (2d Cir. 2010) (also adopting *Bugg* without analysis to establish that the union violated Title VII).

Furthermore, the EEOC argues that *Wells* relied on a few district court cases to support the approach of equating the two legal claims and determining that the overlap means that the analysis of one is intrinsic to the other. *Wells* cites to two district court cases, *Beshears v. Hennessey Industries*, *Inc.*, No. 3:12–00087, 2012 WL 6093457, at *2 (N.D. Tenn. Dec. 7,

2012), and *Hout v. City of Mansfield*, 550 F.Supp.2d 701, 727 (N.D. Ohio 2008), in support. The only Sixth Circuit case *Beshears* cites for the proposition that Title VII claims against a union must include proof of a breach of a duty of representation is *Driver v. U.S. Postal Service, Inc.*, 328 F.3d 863, 868-69 (6th Cir. 2003). *Id.* at *2 (also citing back to *Bugg*). *Driver* addressed a hybrid action under § 301 of the Labor Management Relations Act against a union for breach of the duty of fair representation and the United States Postal Service for violation of a CBA; the case did not involve Title VII claims. *Driver* observed that a union's duty of fair representation to its members, defined in *Vaca v. Sipes*, 386 U.S. 171, 181 (1967), applies to "all union activity." 328 F.3d at 868. But as the EEOC notes, the doctrine of the duty of fair representation is one that complements Title VII protections, and that is subject to unique burdens and limitations that do not apply to claims under § 2000e-2(c). *Driver* relies on *Vaca*, which does not contradict this conclusion. In *Vaca*, the Supreme Court stated that the doctrine is "a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Id.* at 182. The doctrine protects union members specifically, while Title VII protects all employees, including union members. It does not follow that union members should only have protection under a strict combination of the two. Indeed, the Supreme Court stated as much several years after *Vaca*, observing that a breach of a union's duty of fair representation may be more difficult to establish and that it was "noteworthy" that Congress found it necessary to afford protections of Title VII employees and union members. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 58 n.19 (1974).

We are persuaded by the reasoning of the Seventh and Ninth Circuits and adopt it here. Accordingly, we reverse the district court's grant of summary judgment in favor of the DFFA. As a result, we also reverse the district court's denial of compensatory and punitive damages, which the court improperly analyzed pursuant to a duty of fair representation claim. Both remedies are available under Title VII. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34 (1999); *Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1215-16 (6th Cir. 1996).

**D. Backpay**

Plaintiffs nominally argue that there remains a factual dispute regarding backpay and whether Plaintiffs were made whole. The DFFA argues that there is no factual dispute as to

backpay because the City provided the calculations and Plaintiffs never pursued a breach of settlement claim.

Plaintiffs must demonstrate a genuine issue as to a material fact. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 281 (6th Cir. 2012). Summary judgment is appropriate against them if they "fail[] to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." *Id.* The district court noted that Plaintiffs merely stated that they could not determine if full backpay had been received, and further, that Plaintiffs failed to pursue recourse under Fed. R. Civ. P. 56(d), which would have permitted additional discovery regarding backpay. Plaintiffs offered no evidence to show they were not paid their backpay awards in full. Moreover, Plaintiffs failed to make any legal argument to support their claims.

Plaintiffs offer nothing additional on appeal. They make no citations to the record in support of their argument. The case law they cite provides support for the argument that compensatory and punitive damages should be available under Title VII, but does not address their argument regarding backpay. Therefore, we find no genuine issue of material fact and affirm the district court.

## III.

Lastly, we turn to the DFFA's cross-appeal. We review the district court's ruling on attorney fees and costs for abuse of discretion. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013). The district court's discretion is given "substantial deference." *Peoplemark, Inc.*, 732 F.3d at 591. An abuse of discretion occurs when the court "relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *Kallok v. Boardman Local Sch. District Bd. of Educ.*, 24 F. App'x 496, 498 (6th Cir. 2001) (citing *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995)).

The DFFA argues that the district court erred because it only analyzed the DFFA's request for attorney fees and costs under Rule 11 and disregarded their request under two other statutes: an applicable Title VII standard and 28 U.S.C. § 1927. Even if the district court erred in

failing to consider sanctions under Title VII, which we do not find, the DFFA is no longer entitled to attorney fees and costs under Title VII. *See Christiansburg*, 434 U.S. at 421 ("A district court may in its discretion award attorney's fees to a *prevailing defendant* in a Title VII case . . . ." (emphasis added)). As to alleged error regarding 28 U.S.C. § 1927, the DFFA never moved for sanctions under this statute. It neither filed a motion for sanctions under 28 U.S.C. § 1927 nor cited the statute in its motion for summary judgment. Accordingly, we find no abuse of discretion and affirm the district court.

## IV.

Based on the foregoing, we **AFFIRM in part** and **REVERSE in part** the district court's judgment and **REMAND** for proceedings consistent with this opinion.